In the Matter of the Estate of GEORGE W. MAHIN, Deceased,
A. S. ROMP, Administrator With Will Annexed; A. S.
ROMP, Administrator of the Will of GEORGE W. MAHIN,
Deceased, and ANNA CARTWRIGHT (nee ANNA MAHIN),
Appellants, v. CHARLES MAHIN, ERNEST MAHIN and FRED
MAHIN, Appellees.

Trusts: EXPRESS TRUSTS.  An express trust cannot be established by
1  parol evidence.

Same: RESULTING TRUSTS.  A resulting trust arises by operation of law
2  in favor of one who pays the purchase price of property, to the
extent of the payment; and it is competent to show by parol the
fact of purchase and the consideration upon which the trust is
founded.  Where a husband and wife purchased land, the wife paying
for a distinct part but the conveyance of the entire tract was taken
in the name of the husband, the rule that payment of the con-
sideration must be for an aliquot part of the property to raise a
trust *pro tanto*, would not preclude a resulting trust in favor of the
wife for that portion of the tract actually purchased and paid for
by her.

Same: ESSENTIAL ELEMENTS: PAROL EVIDENCE.  To establish a result-
3  ing trust it must appear that the *cestui que* trust paid the con-
sideration; that it was the intention at the time of the conveyance
to create a trust; that the conveyance was to the trustee; and
acknowledgement by him of the trust, or his assent thereto, or his
failure to dissent after knowledge; and all of these facts may be
shown by parol, and when shown the law implies a trust.

Same: PRESUMPTION: BURDEN OF PROOF.  Where the conveyance is to
4  a party for whom the one paying the consideration is under obli-
gation to provide, the law presumes an advancement; and the bur-
den is upon the person seeking to establish a trust to overcome
this presumption, which may be done by parol evidence, or by
facts and circumstances tending to show that the money which went
into the purchase was not a gift or advancement, such as may be
presumed from the relationship of the parties.

Same: SUFFICIENCY OF EVIDENCE. Evidence sufficient to establish a resulting trust must be clear and satisfactory; such as will convince the mind of the trier of the truth of the facts upon which equity builds a resulting trust.

Same: SUFFICIENCY OF EVIDENCE. Where the evidence showed a design to do a certain thing, prompted by a desire to accomplish it, with a preparation to that. end, and it further appeared that the thing so intended was in fact done, although it may not affirmatively appear by whom done, it will be presumed that the person followed out the design and did the thing intended, unless the contrary appears; and this presumption is aided by the fact that the right to do the thing intended was admitted by the party against whom the right is claimed. Thus in an action to establish a resulting trust in favor of a wife in land conveyed to her husband, where ·it was shown to have been the intention of both that she should purchase the land, that she had separate funds of her own to make the purchase and the husband admitted her right in the land, the evidence was sufficient to show that the design was carried out and that she paid the purchase price.

Same: LIMITATION OF ACTIONS. The possession of property held by a trustee is in law the possession of the *cestui que* trust, or at least subordinate to his rights; and the statute of limitations will not run against the rights of the beneficiary until the trustee repudiates the trust.

Same: ESTOPPEL. Failure of her heirs to enforce a trust in favor of a wife against the husband in his life time, will not estop them from enforcing the same against the husband's second wife, who elected to take her statutory rights in his estate rather than the provisions of his will; as she would have received no more had the trust been enforced in his life time, and the rights of neither party had been changed by the acts of the other.

Same: LACHES. Equity will not refuse the enforcement of a resulting trust on the ground of laches, where the party relying upon the ' delay had not been prejudiced thereby in such manner as to make it inequitable to grant the relief.

Same: ESTOPPEL. Where land is held in trust the trust character attaches to the proceeds arising from its sale; and failure of the heirs of the wife in this case to enforce their rights in a proceeding by the husband's administrator to sell the land, did not estop them from subsequently enforcing the trust, no one having been injured by the delay.

Same: ESTOPPEL. The judgment in an action to quiet title to land
11 belonging to a decedent to which the heirs of the decedent were
not made parties, did not bar their right to enforce a resulting
trust in favor of the wife.

Same: DESCENT AND DISTRIBUTION. A husband holding land in trust
12 for his wife becomes entitled to a one third interest therein, upon her
death; and upon his death his second wife will take a one third
interest in his estate, and the heirs of the first wife the remainder.

*Appeal from Monroe District Court.*—HON. FRANK W.
EICHELBERGER, Judge.

THURSDAY, OCTOBER 23, 1913.

ACTION to establish a resulting trust in land.—*Modified*
and *Affirmed.*

*Dashiell & Mason* and *Mabry & Hickenlooper,* for appel-
lants.

*John T. Clarkson* and *D. W. Bates,* for appellees.

GAYNOR, J.—George W. Mahin and Corilla I. Mahin were
husband and wife. The contestants, Charles, Earnest and
Fred Mahin, are their children. Corilla I. Mahin died intes-
tate January, 1895, leaving, surviving her, her husband and
the three children aforesaid. During the life of the said
Corilla I. Mahin, she and her husband occupied a small tract
of land adjoining the land in controversy. In the fall of
1882, they purchased the W. ½ of the S. W. ¼ of section 32,
township 72, range 17; the west half of which is in controversy. It appears in the fall of 1882 a certain amount of
money was paid to the owner of the land, Margaret Hayes,
on the purchase price, and in the spring following a deed to
the land was made by Margaret Hayes and her husband to
George W. Mahin, being an ordinary warranty deed; that a
mortgage was given to secure balance of purchase price; that

George W. Mahin and Corilla I. Mahin, with their children, occupied this land up to the time of the death of Corilla, which occurred in January, 1895. It appears that on the 8th day of December, 1896, George W. Mahin intermarried with one Anna Eshpaugh, and that she and the said George W. Mahin occupied the land up to the time of the death of George W. Mahin, which occurred in March, 1909; that he left surviving him the said Anna, his wife, and the three sons aforesaid, children of his first wife.

It is claimed now by the children, Charles, Earnest, and Fred, that their mother, Corilla, was at the time of her death the owner of the W. ½ of the land above described; that their father, George W. Mahin, held the same in trust for her; that at the time of the purchase of the eighty and the making of the deed to George W. Mahin their mother paid the purchase price of the west forty, or paid a portion of it at the time of the purchase, and subsequently the balance of the purchase price of the west forty; that it was understood and agreed between them at the time of the purchase that she should pay for the west forty and that he should pay for the east forty of said land; that the deed should be taken in his name for the full eighty; and that this was done accordingly. It is claimed that she was the inducing cause of the purchase of the said eighty; that she had certain money which she had received from her father's estate which, with money obtained from the sale of stock, she desired to put in this land, she to have the west forty and her husband the east forty. It is claimed that the title was taken in the father's name at his request and solicitation over her protest at first; she claiming that she should have a separate deed to the west forty, but assenting that the title be placed in his name because "it would not look well," as he urged, "to have part in his name and part in hers."

George W. Mahin left a will, which was duly probated, in which he gave to his then wife, Anna, one-third in full of all his property, real, personal, and mixed, absolutely as her own; a third of the real estate to be set off to her in such a

manner as to include the homestead occupied by him at the time of his death. He gave to his son Fred Mahin the sum of $800 and to his son Earnest $2,400, and the property remaining was to be distributed to his three sons, share and shade alike. It appears that, after this will was probated, A. S. Romp was appointed administrator with the will annexed and entered upon the discharge of his duties. That a formal notice was served upon Anna Mahin, surviving spouse, to elect whether she would take under the will or her distributive share, homestead, and exemption. This notice was served April 30, 1910, and signed by the contestants. That thereafter the said Anna Mahin, on May 17, 1910, elected to take the rights given her by statute and repudiate the will. These contestants, the sons of Corilla and George Mahin, claim the west half of the west half of the southwest quarter of section 32-72-17, as the heirs at law of Corilla, claiming that at the time of her death she was the owner of said land, and that her husband, the father of these children, George W. Mahin, held the title in trust for her, and they deny any right on the part of the second wife to a distributive share therein.

The court below found in favor of contestants that Corilla I. Mahin was the owner of the land at the time of her death; that her husband, George W. Mahin, held the legal title to the same in trust for her; that she had purchased and paid for the land; that by reason of the purchase and payment made by her, and the taking of the deed in the name of George W. Mahin, a trust resulted therefrom; and that George W. Mahin held the title in trust for her only; and from this finding the administrator with the will annexed, and the said Anna, widow of George W. Mahin, appeal.

It has been frequently held by this court, following the statute, that an expressed trust cannot rest in parol. See section 2918 of the Code of 1897, wherein it is said: "Declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance; but this provision does

1. TRUSTS: express trusts.

not apply to trusts resulting from the operation or construction of law."

In *Culp v. Price*, 107 Iowa, 134, it is said:

That section expressly excludes from its provision, . . . trusts resulting from the operation or construction of law. . . . The theory of the resulting trust is that he who supplies the purchase money intends it to be for his own benefit, and not for that of another, and that the conveyance is taken in the name of another as a matter of convenience or arrangement between them. If two or more advance the price, and the deed is taken in the name of one only, a trust will result in favor of the other for shares proportionate to the part of the price paid. It has been held that the payment, to raise a trust *pro tanto,* must be for an aliquot part of the real estate. (See cases therein cited.) The principle is that the whole consideration for the whole estate, or for the moiety, the third, or some other definite part of the whole, must be paid to be the foundation of a resulting trust; and that the contribution or payment of a sum of money generally for the estate, when such payment does not constitute the whole consideration, does not raise a trust by operation of law for him who pays it; that the reason of the distinction obviously is that neither the entire interest in the whole estate, or in any given part of it, could result from any such payment to the party who makes it, without injustice to the grantee by whom the residue of the consideration is contributed.

This last statement was taken from *White v. Carpenter,* 2 Paige (N. Y.) 240. The court further proceeds: "But so strict a rule has been much impinged by the liberality of the courts in determining what will establish payment for an aliquot part, and, in the more recent cases, the presumption has been indulged that each party contributing to the purchase intended to pay for that portion of the land his contribution bears to the entire price paid."

The foundation of a resulting trust is the payment of the consideration or the purchase price. A trust in the property purchased arises by operation of law in favor of him who pays it to the extent of the payment.

It is true in this case that the deed conveyed the entire eighty and vested George W. Mahin with the legal title to the entire eighty. The contestants claim, however, that their

**2. SAME: resulting trusts.**

mother, Corilla, purchased the west forty and paid for it. If this be true, there is no question of moiety or aliquot part. They claim that she purchased and paid for the entire west forty, that the title to the entire west forty was taken in her husband's name at his solicitation, and it would be immaterial that more than the forty purchased by her was included in the deed. They do not claim that she contributed to the purchase of the entire eighty, and are therefore entitled to a resulting trust in her favor in the entire eighty, to the extent of the payment made by her. Their claim is that she purchased and paid for the west forty and that her husband held this west forty in trust for her. They do not claim or rest their claim upon an expressed agreement between the father and the mother as a foundation for the trust, but upon the fact that she purchased and paid for this west forty, and that a trust resulted in her favor by reason of that fact, and parol evidence is competent to show the fact of purchase and payment upon which the trust is founded.

Exclude parol evidence of the fact of purchase and payment, and the resulting trust cannot be established except by the same evidence that would prove an expressed trust. To

**3. SAME: essential elements: parol evidence.**

create a "resulting trust" the party claiming the trust may show: (1) Payment by the *cestui que* trust with her own money. (2) The intention on the part of the *cestui que* trust at the time of the conveyance that a trust be created. (3) Conveyance to the trustee. (4) Acknowledgment on the part of the trustee of the trust, or his assent thereto, or failure to dissent after knowledge.

The payment may be shown by parol. The intention of the parties at the time to create a trust, the conveyance and knowledge on the part of the trustee of the *cestui que* trust's

intention, and his assent thereto, may be all shown by parol, and from these facts, when shown, the law implies the trust. The general rule is, where, upon the purchase of the property, the consideration is paid by one, and the legal title conveyed to another, a resulting trust is thereby raised, and the person named in the deed will hold the property as trustee of the party paying the consideration. In general, the foundation of this kind of trust is the natural equity that arises when parties do certain things. Thus, if one pays the purchase money and takes the title in the name of another, in the absence of all evidence of intention, the law presumes a trust from the natural equity that he who pays the money for property ought to enjoy the beneficial interest. See Perry on Trusts, Section 124; *Cotton v. Wood,* 25 Iowa, 44.

But, however, if the person receiving the conveyance is one for whom the party paying the consideration is under obligation to provide, the law presumes it to be an advancement to him for whom provision is to be made, and the burden then rests upon the person who seeks to establish a trust to overcome this presumption by sufficient evidence, and this presumption may be overcome by parol evidence, or by facts and circumstances from which it may be made to appear that the money that went into the purchase price was not a gift or an advancement, such as might be presumed from the relationship of the parties. See *Cotton v. Wood,* 25 Iowa, 47.

4. SAME: presumption: burden of proof.

It has been held, and it is the law, that the evidence to show a resulting trust must be clear and certain. It must convince the mind of the trier of the truth of the facts on which equity builds a resulting trust. See *Cunningham v. Cunningham,* 125 Iowa, 681; *Malley v. Malley,* 121 Iowa, 237; *Luckhart v. Luckhart,* 120 Iowa, 248. It is said in *Malley v. Malley, supra:* "The presumption is in favor of the legal title, especially one which has stood unquestioned and undisturbed for many years,

5. SAME: sufficiency of evidence.

. . . . and something more than a slight preponderance of the testimony is required to establish a trust.''

We started with these general propositions that, where it fully appears that one purchases and pays for land, taking the title in the name of a third person, the person in whose name the legal title is taken is deemed to hold such title in trust for the real purchaser. The person who contends that the legal title is held in trust must establish his contention by clear and satisfactory evidence. The burden rests upon the party claiming the trust, to establish, by clear and certain evidence, the facts out of which the resulting trust would arise, to wit, the purchase and payment, and the understanding and intention of the parties in placing the legal title in the alleged trustee.

The original parties to this transaction are dead. Therefore, all that they said and did, touching this matter, is found only in the memory of men. Many years have passed, but their conduct, what they said and did, when 6. SAME: sufficiency of evidence. no motive for falsification existed, when clearly shown, is most satisfactory evidence of their understanding and intention at the time. Allowance, of course, must be made for the infirmity of memory and the difficulty that attends recalling and stating accurately events and happenings in the lives of others in which the witnesses had no personal interest or motive or purpose to remember. Yet we realize that events sometimes of the most trivial character remain in the memory, when events of more serious and greater importance have passed away. The witnesses in this case were the friends and neighbors of the Mahins. The conversations detailed were not sought after, nor do they appear strange or unnatural. We must assume that they have detailed what the memory now holds, and that they have done this in good faith, and with no sinister or improper motive.

Assuming now that these witnesses who have testified touching these matters, though speaking from memory, have spoken honestly and truthfully, we reach the following conclusions:

Corilla I. Mahin received a legacy from her father's estate some time about 1876. That the full amount of this legacy was paid to her at intervals prior to 1883. That she received at least $800 from that source, possibly $1,000. Some confusion exists in the testimony as to the $200. That subsequently she sold certain personal property which at the time of the sale was conceded by George W. Mahin to be her property. That at the time of the sale, she, in the presence of her husband, said that she wanted to apply the money received from the sale of the personal property upon the land purchased from Mrs. Hayes. That at the time of the purchase it was understood between her and her husband that she was to apply the money received from her mother's estate in payment of the west forty. That George W. Mahin and his wife, speaking of this eighty, always spoke of the east forty as belonging to George and the west forty to his wife. That in speaking of this forty in controversy during the life of Corilla, George W. Mahin always called it "Ma's forty," and spoke of the east forty as belonging to himself.

Margaret Hayes, from whom the land was purchased, testifies that at the time of the purchase:

She spoke of wanting two deeds to the property, and I said, 'I will make one deed to you and one to George for the other forty,' and at the time the deed was made Mr. Mahin said: 'We have decided to buy the farm. We have counted up, and Corilla thinks she can buy the west half and I will buy the other half.' Then I said, 'I will make two deeds.' He said, 'Not necessarily.' I said, 'If she pays for half, she should have it in her own name.' She turned to him and said, 'You know, George, I have over $1,800 in money and stock and I can pay for one-half of the eighty.' He replied that they would fix that when the deeds were made, or something to that effect. The next conversation was the evening before the deeds were executed, and I said: 'What have you decided? Do you want one or two deeds?' Mrs. Mahin said, 'I would like to have the west forty in my name, but George does not think so.' I said, 'I think you ought to have it that way.'

He looked up at me and said, 'Do you think I would cheat Corilla's children out of their mother's money?'

She further testified that in conversations between her and the Mahins, afterwards, she heard Mr. Mahin say, in Mrs. Mahin's presence, that the west forty belonged to her. This was after the deed was executed.

We gather from this whole record that it was the intention of the parties, at the time this land was purchased, that he should hold the west forty in trust for his wife; that it was understood between them that she should pay and did pay for the west forty. Of course, the evidence does not show the actual payment of the money by her to Mrs. Hayes, but it does appear that she had money from her mother's estate; that she sold property which she held in her own right for the purpose of making payments; that it was her design and purpose in selling the property to apply the money on the purchase price of this land; that she sold the property for that distinct purpose. At one sale she said in substance, ''I am in no hurry about the money, so that I may have it in time to make my payments on the land.''

Where it is shown that a design and purpose is clearly formed in the mind to do a certain thing, and the desire exists to do the thing, and preparation is made for the doing of it, and it is afterwards shown that the thing so intended to be done was in fact done, though it does not appear affirmatively by whom done, it is reasonable to presume that the person followed out the intention of the mind and did the thing intended, unless the contrary appears, and this inference is more reliable as a basis when it appears that the right, which rested alone upon the doing of the act intended to be done, was admitted by the party against whom the right is claimed. The right could not exist without the doing of the thing intended, to wit, the payment of the money. The right having been admitted by the party against whom the right is claimed, the inference naturally is that the thing intended to be done,

to wit, the payment of the purchase price, was in fact done in pursuance of the intent.

In Wigmore on Evidence, vol. 1, section 102, we find the following: "The presence of a design or plan to do or not do a given act has probative value to show that the act was in fact done or not done. A plan is not always carried out, but is more or less likely to be carried out. The existence of the plan is always used in daily life as the basis of an inference to the act planned," citing *Cook v. Moore,* 11 Cush. (Mass.) 213, in which it is said: "The existence in the mind of a deliberate design to do a certain act, when once proved, may properly lead to the inference that the intent once harbored continued and was carried into effect by acts long subsequent to the origin of the motive by which they were prompted." Wigmore, at section 237, of the same volume, says: "The existence of a design or plan is usually employed evidentially to indicate the subsequent doing of the act designed or planned." This doctrine was recognized by our own court in the case of *Larsen v. Telegraph Co.,* 150 Iowa, 752.

In this case we find the intent of the parties, touching this land, revealed and made manifest by the undisputed testimony of what was said and done by them at the time of this purchase. Here we find in the record evidence of admissions, on the part of George W. Mahin, of the rights of his wife in the property in controversy. Here we find the fact established that she had not only this inheritance from her mother's estate, which was put into this property, but also that she sold personal property afterwards with the intent and purpose of raising money to apply upon the mortgage given to secure the balance of the purchase price. Here we find her mind revealed, in statements made by her, that her purpose and intent in selling the property was to apply the proceeds upon the purchase price of this land. We find the purchase price was in fact paid by some one. We find the right to this land in controversy admitted by her husband, and the irre-

sistible conclusion from this is that she paid the purchase price, with the understanding between herself and her husband that she should own the west half of this eighty and he the east half, and that the making of the deed placed the title to the west half in him in trust for her.

It is claimed, however, that the contestants' rights are barred by the statute of limitations. This cannot be true, for the general rule is, possession of property by a trustee is, in law, the possession of the *cestui que* trust, or at least subordinate to his rights. In such case, the statute of limitations will not begin to run until the trustee repudiates his trust. See *Smith v. Smith,* 132 Iowa, 700; *Long v. Valleau,* 87 Iowa, 675; *Zunkel v. Colson,* 109 Iowa, 696; *Murphy v. Murphy,* 80 Iowa, 740; *Wilson v. Green,* 49 Iowa, 251. In this case it does not appear that George W. Mahin ever in his lifetime repudiated, or even questioned, the right of his wife, as now claimed, in the property in controversy. In fact, it affirmatively appears that he never did, and that her right was never questioned until after his death. Under the authorities above cited, the statute of limitations would not avail appellants.

7. SAME: limitation of actions.

It is next contended that these contestants are estopped, but this will not avail for the reason that neither party has changed his or her position for the worse by reason of any acts done by these contestants. It does not appear that she surrendered any rights that she would have had had they proceeded at once to insist upon the claim now urged. The wife, under the will, got one-third of all the real estate. Under the law she gets one-third of all the real estate and all other statutory rights given her, to wit, her homestead and exemptions. Having elected to take under the law, she would have received no more had these defendants urged their claim immediately upon the death of the father or even before the death of the father, than she now receives. Therefore one of the essential elements of estoppel is wanting.

8. SAME: estoppel.

Next it is urged that the contestants were guilty of laches which defeats their right to recovery, but in such case it must appear that the party relying upon such laches has been prejudiced by the delay in such a manner that it would be inequitable to grant the relief sought. See *Light v. West*, 42 Iowa, 138. In *Long v. Valleau*, 87 Iowa, 686, the court says: "We have held that a court of equity will not refuse to enforce a trust clearly established, on the ground that the claim is stale, when the cause of action is not barred by the statute of limitations."

9. SAME: laches.

It is next contended that the contestants are estopped because of certain actions brought involving the title to this property. It is true that the executor with the will annexed brought an action, and the court ordered this land sold as the property of George W. Mahin; that these contestants were parties to that suit. They are now claiming a right to the proceeds arising from the sale of the west forty. If they had a right to the west forty as claimed by them, they have also a right to the proceeds. No one was prejudiced by their silence. Nor does this adjudication involve the rights herein claimed. The proceeding was under the provisions of the will. All property was sold, including this forty. If the forty was held in trust, the trust character of the forty when sold, rests in the proceeds. No one was prejudiced by their silence, or by this sale.

10. SAME: estoppel.

The action to quiet title in George W. Mahin was not against these defendants. Nor did it involve the rights herein contended for, but simply to quiet titles against third persons. George W. Mahin held the legal title. The rights of these parties were not adjudicated in that suit or called in question, or determined in any way. It seems to have been a friendly suit, so far as these parties were concerned, and not adverse in its character. No relief for appellants can be found in this adjudication.

11. SAME: estoppel.

We hold that the court did not err, therefore, in finding that George W. Mahin held the property in controversy in

`trust for his wife, Corilla, and that these children, contest-
ants herein, as the heirs at law of Corilla, are
entitled to the proceeds resulting from the
sale of the said forty. But this decree, how-
ever, must be modified in this: It being conceded that Corilla
was the owner of the land at the time of her death, then it fol-
lows, upon her death, her husband became entitled to an undi-
vided one-third interest in said forty; that upon his death,
his wife, Anna, became entitled to a one-third of the one-third
of said estate, or one-ninth interest therein; and the decree
should be so modified as to give to these contestants, Charles,
Earnest, and Fred Mahin, eight-ninths of the proceeds of the
sale of the said forty, and to the widow, Anna Cartwright,
*née* Mahin, an undivided one-ninth. And with this modifica-
tion, the decree of the lower court stands modified and
*Affirmed.*

12. SAME: descent and distribu-tion.

WEAVER, C. J., and DEEMER and WITHROW, JJ., concur.