ANNA NEWMAN et al., Appellants, v. CHARLES CALLAHAN et al., Appellees.

No. 40783.

JUNE 20, 1931.

1004

 ██

Hysham & Billings, for appellant.

Lester L. Orsborn, for appellees, Charles Callahan and Lenore Callahan.

George S. Wright and Addison G. Kistle, for appellees, Herman Callahan, Harry Callahan and Mrs. Harry Callahan.

ALBERT, J.—On the 14th day of March, 1929, a judgment was rendered in favor of Anna Newman against Charles and Lenore Callahan in the sum of $11,128.44 and costs. Four days later an execution issued thereon and return nulla bona was made by the sheriff. Whereupon, on September 12, 1929, Anna Newman, as plaintiff, instituted the present action to set aside certain transfers of real estate and personal property made by Charles Callahan to certain of his relatives.

On October 2, 1929, Charles Callahan was adjudged a bankrupt in Federal Court, and Clifford Powell was appointed trustee therein. On October 29, 1929, Lenore Callahan was also adjudged a bankrupt and Clifford Powell appointed trustee of her estate. Whereupon, on January 10, 1930, Clifford Powell, as trustee, appeared in the present case under authority of Federal Court and was substituted as party plaintiff herein.

In December, 1928, Charles Callahan was the owner of a farm of about 278 acres in Montgomery County. It was bottom land, cut by the river, and part of it was overflowed at times, and the value thereof we are unable to determine from the record. It was incumbered by mortgages in the aggregate sum of $27,750.00.

On December 14, 1928, Charles Callahan and his wife, Lenore, entered into a land contract with Herman Callahan, brother of Charles, for the sale of said property for a consideration of $37,960.00. A receipt for $960.00 thereon is acknowledged in writing. Herman agreed to pay the outstanding mortgages

on the land, to pay $1,250.00 March 1, 1929, and the balance of $10,000.00, $5,000.00 being due March 1, 1924, and $5,000.00 March 1, 1939.

On December 22, 1928, Charles Callahan executed a written assignment of all of his right, title and interest in the above contract to Harry Callahan. During all of the time of the controversy herein, the aforesaid land was occupied by Ira J. Black, as tenant, and Charles Callahan and Black conducted said farm and looked after the personal property thereon in the nature of a partnership, each being interested, as Black testified, on a fifty-fifty basis, both in the personal property and the crops and produce thereon produced. As we understand the record, Charles Callahan's interest in this personal property was also transferred by him to Herman and Harry Callahan, and it was to set aside the transfer of this real estate and personal property that this action was originally instituted.

Before the case came on for trial, one of the mortgages against said land had been foreclosed, and the sheriff's certificate issued thereon to an outside party, who is not a party to this litigation, and the time for redemption expired without any redemption by any of the parties. The question, therefore, as to the fraudulent transfer of the real estate, has become entirely moot, and there is nothing before us for consideration as to the real estate. As to the personal property, on December 14, 1928, Charles Callahan executed a chattel mortgage to George Murray in the amount of $2,000.00 on certain cows, cattle, pigs, corn on the aforesaid land, and all crops grown in the years 1929 and 1930. This mortgage was duly recorded on the last-named date.

Ira J. Black was a party defendant in this case, and he made an accounting of the share of Charles Callahan in the personal property on said farm showing that he had on hand in cash belonging to said Callahan, about $400.00 for cream sold, and in passing it may be noted that this does not seem to be covered by the Murray chattel mortgage. There was some corn and grain in storage on the place which, of course, would be covered by the Murray mortgage, but all of these things are covered by the transfer made by Charles Callahan to Herman and Harry Callahan, and to reach these matters is the purpose of this proceeding to set aside this transfer.

It might be noted in passing that the original petition prayed for a receiver to take possession of these crops and the personal property on the described premises. The lower court denied plaintiff all relief.

The first question raised is that this trustee has no standing in court because he has not made such showing as would warrant the court in granting him any relief in that in his official capacity, to maintain an action of the present kind, he must first make a showing that in the estate in which he is trustee, creditors' claims have been filed and allowed, and that he needs the proceeds of this property, which is alleged to have been fraudulently transferred, for the payment of such creditors. There is no showing whatever in this record that any claims have been filed with the trustee and allowed in either the estate of Charles or Lenore Callahan.

In the case of Crary v. Kurtz, 132 Iowa 105, l. c. 113, we said:

"But this does not obviate the necessity of the administrator, assignee, or trustee in bankruptcy in such a case alleging and proving that claims of creditors have been filed and allowed as contemplated by law. He may question the *bona fides* of the transfer of the debtor's property, in the interest of those creditors only to whom he may distribute the estate which shall come into his hands. That outstanding obligations exist is not enough. Unless these are established and allowed, as authorized by statute or the act of Congress, he has no authority to pay them from moneys that may come in his hands, to say nothing of the property the debtor has transferred to others. And, unless it appears that the representative of the creditors may appropriate the proceeds of property in the hands of third parties to the satisfaction of the debtor's obligations, setting aside transfers to them as fraudulent would be of no practical advantage."

The rule laid down in the above entitled case has been consistently followed by this court in Crowley v. Brower, 201 Iowa 257, and Hoskins v. Johnston, 205 Iowa 1333.

The plaintiff having failed to establish that there were claims filed in the bankruptcy proceedings and that such claims had been duly allowed, he is not in a position to maintain this action.

Further than this, we held in numerous cases (the last

being Harvey v. Phillips, 193 Iowa 231) that it is not enough, in an action of this kind, to show fraudulent intent on the part of the vendor, but there must be a corresponding intent on the part of the vendee. In other words, the evidence must show that the grantee participated in the fraud.

In the case of Hawkins v. VerMeulen, 211 Iowa 1279, we said:

"Mere ground for suspicion does not make a case in favor of a creditor seeking to subject property conveyed to a third party to execution. * * * The evidence in such case, to justify the setting aside of a transfer of property at the suit of a creditor, must be clear, satisfactory, and convincing."

From the record in this case taken as a whole, plaintiff has not made the showing required by the above cases. It follows, therefore, that the ruling of the district court was right.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.