L. A. ANDREW, Superintendent of Banking, Receiver, Appellant, v. WILLIAM MARTIN et al., Appellees.

No. 42366.

April 3, 1934.

C. O. Boling, and B. J. Maxwell, for appellant.

Otto L. Schluter, for appellees.

ANDERSON, J.—This is an action in equity in the nature of a creditor's bill to subject real estate to the payment of a judgment obtained by the plaintiff-appellant against William Martin, one of the defendants-appellees. The property involved is 240 acres of land in Jones county, Iowa. Plaintiff in his petition states and claims that in May, 1932, he obtained judgment against William Martin, one of the defendants, in the sum of approximately $1,600 upon a promissory note upon which he was surety. A general execution was issued and returned unsatisfied; that the real estate herein involved consisting of 240 acres was, prior to February 2, 1932, owned by the

said defendant William Martin for many years, and that on said date the said defendant made a pretended conveyance thereof to his wife and codefendant, Susan Jane Martin, with the intent to hinder, delay, and defraud plaintiff in the collection of his said judgment, and that the grantee therein took such conveyance with like intent and without any consideration paid therefor; and plaintiff asked that the described real estate be subjected to the payment of his judgment. The defendants filed separate answers to the plaintiff's petition, which answers were practically in the same language and were in two divisions. The first division alleged that about the time of the marriage of the defendants in the year 1885 his wife, Susan Jane, loaned to her husband the sum of $500, and that on or about July, 1900, she loaned to him the further sum of $5,562.74; that the land in question was purchased by the defendant William Martin in 1894; and that the money so borrowed from his wife was used by him in the payment of the purchase price of the land involved, and the repair and construction of buildings thereon; that the money was loaned by the wife to the husband with the express promise that he should pay and account therefor; and that the husband had at all times prior to February 2, 1932, been indebted to the wife therefor; and that on February 2, 1932, upon demand made by the wife for settlement of the account, the husband executed a deed conveying to her the 240 acres in question. And at that time the value of the real estate so conveyed was less than the amount owing the wife, Susan Jane Martin; and that the conveyance so made and accepted was in good faith and for the purpose of payment of the indebtedness. In the second division of the answers the defendants allege that, the purchase price of the said land in question having been paid by the wife, she thereby became the equitable owner of the real estate, and that the title was held by the husband in trust for her. A motion was made by the plaintiff to strike division I of the foregoing answers on the ground that the two divisions were repugnant and inconsistent. This motion does not seem to have been ruled upon, and the plaintiff filed a reply admitting the allegations of the second count of the answers and alleging that the defendants were estopped from claiming any rights in the said real estate prior to the rights of the plaintiff. Amended and substituted answers were filed by each of the defendants alleging the loans of the various sums of money by the wife, Susan Jane, to her husband, William, and the purchase of the land in question, substantially as alleged in the

original answers, and further alleging that a controversy had existed for many years between the defendants as to the rights of the wife Susan Jane in the real estate involved; that she at all times claimed rights on account of the loans made to her husband, which had been used in the purchase of the real estate involved, and the construction of the improvements thereon; that on February 2, 1932, a settlement of said rights was made between the parties, and the husband, William, executed a warranty deed conveying the real estate to the wife, Susan Jane. At the time of such conveyance, the reasonable market value of the land involved was $12,000, subject, however, to a mortgage of $3,000, and that the money due the wife from the husband at that time, with interest, exceeded the sum of $15,000; that the said conveyance was made and accepted in good faith, and for the purpose of the payment of said debt. Amendments to the replies of the plaintiff were then filed, but did not change the pleaded issues.

There was a trial to the court and a finding and judgment dismissing plaintiff's petition, and plaintiff prosecutes this appeal.

■ There is no evidence of fraud or any intent, on the part of either of the defendants, to hinder, delay, and defraud plaintiff in the collection of his indebtedness, and no evidence that the conveyance from the husband to the wife was without consideration. If the plaintiff could recover at all, under this record, it would necessarily have to be upon the theory of a resulting trust and estoppel, and it is our opinion that the evidence falls far short of establishing a resulting trust as contended by the appellant.

The following facts are fairly shown by the record. The defendants, William Martin and Susan Jane Martin, were married in 1885. At that time neither of them owned any property. The father of the wife, John Niblo, gave to his daughter, Mrs. Martin, $500 and some farm equipment and personal property. The cash was loaned by the wife to her husband, William Martin, and the personal property turned over to him. The defendant, William Martin, then leased from his father-in-law the land here involved and continued to live thereon and farm the same as tenant until 1894, when he purchased the farm for $4,500. At the time of purchase he paid $1,300 of the purchase price in cash and executed his note secured by a mortgage upon the real estate for the balance. The wife, Susan Jane, did not join in the note or mortgage. About 1900 the father-in-law died, and Mrs. Martin inherited from his estate approximately $5,600.

Both husband and wife testified that this money was also loaned to the husband, William Martin, to pay the mortgage upon the land and to construct and repair buildings and improvements thereon. The title to the land remained in the husband, William Martin, for more than 30 years, and until February 2, 1932. There had been a continued controversy between the husband and wife as to the funds of the wife that had been invested in the farm or loaned to her husband. Both testified that, at the time of the turning over of the various sums of money by the wife to the husband, there was an agreement expressed that the wife should receive payment thereof together with interest, either in money or property. About the time the conveyance was executed of the land to the wife, February 2, 1932, the husband, William Martin, was 73 years of age and in failing health, and they testify that in view of this fact they concluded to have a settlement of the transactions between them, and that the amounts of money received by the husband from the wife were computed with interest and it was determined and agreed that the aggregate amount thereof exceeded the sum of $15,000. It seems to be conceded in the record that the value of the farm at that time was $12,000, subject to a mortgage of $3,000. It was then agreed that the wife should receive and accept a conveyance of the land involved in satisfaction of the indebtedness owed her by her husband, and the deed in question was then executed and delivered to the wife, and by her recorded.

There appears a persistent attempt upon the part of appellant in the cross-examination of Mrs. Martin to induce her to say that she was at all times the owner of the land in question, and appellant argues here that such is the fair inference or conclusion to be drawn from her testimony. But we cannot reach such conclusion upon a careful reading and study of the record. Mrs. Martin testified that she did not take a promissory note from her husband at the time she turned the money over to him; she says, "I trusted him. I considered I was a part owner of the land because he owed it to me. I would suppose that I would have some interest in it by reason of all the money I loaned to my husband." And this testimony is the nearest approach to a claim that the wife owned the title to the property. The husband testified: "I borrowed it from her, and she said I would have to pay it back, and interest, and I said, I would have to pay it back with money or property, and I was to pay her interest on it. I promised to pay it back with interest. I never paid any of

24

the principal or interest that I borrowed from my wife. My wife kept a memoranda of the transactions, I did not keep any particular record. I have always dealt with the farm and treated it as if it was my own, and managed it myself." The wife had nothing to do with the purchase of the farm by her husband, and it is not disputed that the first payment made on the purchase price thereof of $1,300 was the accumulations and savings of the husband from the time he was married in 1885 to the date of the purchase of the farm in 1894.

At the close of all the testimony, the defendants each filed an amendment to their separate amended and substituted answers, to conform to the proof, as follows:

"Par. 7. That at the time all of the hereinbefore stated money was turned over to William Martin by Susan Jane Martin, there was an agreement to repay this money with interest and account for the value of the personal property, and that the sum of $3,616.00 was used to pay off an incumbrance upon the real estate described in said Amended and Substituted Answer, which said note and mortgage were signed by William A. Martin and were not signed by Susan Jane Martin."

The plaintiff objected to the filing of this amendment for the reason that it came too late and took the plaintiff by surprise, but no continuance was asked by the plaintiff, and it was agreed that plaintiff's reply should stand to the amendment as filed by the defendants. There was no change in the position of the defendants by the filing of this amendment, and no error in permitting it to stand.

A resulting trust as contended for by the appellant must result, if at all, at the instant the deed is taken and the legal title vested in the grantee. Intention is always an essential element, although that intention need not be expressed by words. Jones v. Storms, 90 Iowa 369, 57 N. W. 892; Burkhardt v. Burkhardt, 107 Iowa 369, 77 N. W. 1069; Kortum v. Kortum, 211 Iowa 729, 234 N. W. 220. In the last cited case we said: "If the $700 had been advanced by Josephine (wife) as her own money, yet such loan or advancement would not operate as a resulting trust upon a title that had been held by Adolph (husband) for fifteen years prior thereto." In the instant case the title had been held by the husband, William, for 6 or 7 years prior to the loan or advancement by the wife of the $5,600 from her father's estate.

We have held that any payment or advancement of money,

*after* the purchase, cannot raise a resulting trust without overturning the statute of frauds. Olive v. Dougherty, 3 G. Greene 371, and Harnagel v. Fett, 215 Iowa 868, 244 N. W. 704. The burden of proof is always upon the one claiming the resulting trust, and, in order to establish the same, the evidence must be clear, explicit, satisfactory, convincing, and leave the existence of no essential element to conjecture or to remote and uncertain inference. "A resulting trust must arise, if at all, from the state of facts existing at the time the legal title to the property is acquired, and cannot arise from matters coming into existence afterwards."

In Sprague, Warner & Co. v. Benson, 101 Iowa 678, on page 680, 70 N. W. 731, we said:

"This money she (plaintiff) let her husband have, with an agreement, as they both claim, that it should be repaid, with interest. * * * We think it quite clearly appears, however, that there was an agreement on the part of the husband at the time he received the money to repay it, with interest, to his wife. True, the agreement was oral, and did not fix the exact time at which the money should be repaid, but neither of these facts is essential to the validity of the contract. As the wife was a creditor of the husband, he had a right to pay the debt, even though other creditors were thereby hindered or delayed in the collection of their claims. There is nothing in the evidence to show that the transaction was not in perfect good faith."

In Mahaska County v. Whitsel, 133 Iowa 335, 110 N. W. 614, we used the following language:

"There can be no controversy under our authorities that if Frank Whitsel, at the time of his marriage to his wife, received from her $350, with the oral agreement to repay her in the future, even at an indefinite time, and thus became her debtor, he might subsequently, even against creditors who had in the meantime acquired claims as against him, convey to her in satisfaction of such indebtedness real estate or an interest therein; and that his creditors cannot question the validity of such conveyance, although the effect may be to hinder or delay them in the enforcement of their claims. * * *

"And it is immaterial that such creditors have extended credit on the faith of the property standing in the husband's name, provided the wife has not been guilty of any purpose to enable her husband to defraud such creditors. * * *

"We think there can be no doubt under the evidence that de-

fendant Frank Whitsel did actually receive from his wife at the time of, or soon after, their marriage $350, * * * with the understanding that he should use the money and repay it to her in the future. There is no evidence that the transfer to her of a one-half interest in the real estate in controversy, which was procured for $600, although its present value greatly exceeds that amount, was accepted by her for any other purpose than as payment of his indebtedness to her. Indeed, there is no evidence that at the time such conveyance was made the wife had any knowledge that her husband was indebted to intervenor or any other person. We find no ground, therefore, for setting aside in behalf of the intervenor the conveyance to Nella Whitsel (wife) of the one-half interest which she claims."

To the same effect is the holding in Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; and Johnson v. Warrington, 213 Iowa 1216, 240 N. W. 668. In all of the foregoing cited cases the facts were very similar to the facts in the instant case. This is especially true in Clark v. Clark, supra, in which the money loaned by the wife to the husband was inherited by her, and in which no note or other evidence of the debt was executed. In that case we held:

"It is a well established rule in this state that a debtor is entitled to prefer any one of his creditors by payment of the debt, or by conveying property to him in satisfaction of the debt, though it be to the disadvantage of other creditors."

To the same effect is Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268; County Savings Bank v. Jacobson, 202 Iowa 1263, 211 N. W. 864; Newman v. Callahan, 212 Iowa 1004, 237 N. W. 514, and many other cases in this and other jurisdictions.

The cases cited and relied upon by appellant disclose facts entirely unlike the facts in the case at bar. In them we find either that the title to land purchased for the wife with her money was held for her by her husband, or, that there was no evidence of a loan from the wife to the husband of money used in purchasing the land, or, that the entire purchase price was paid by the wife or with her money, or, that no agreement existed for the repayment of money turned over to the husband by the wife, or, that no relation of creditor and debtor existed between the husband and wife. No case

to which our attention has been called supports appellant in his contentions in the instant case.

We therefore conclude that no resulting trust existed under the facts in this record, that there was a valid indebtedness existing between the husband and wife, and that the conveyance in question was made in good faith, without fraud, or intent to defraud, and in satisfaction of a valid indebtedness, and for a full and valid consideration. There was no error in the ruling and order of the trial court in dismissing plaintiff's petition, and an affirmance necessarily follows.—Affirmed.

CLAUSSEN, C. J., and KINDIG, STEVENS, MITCHELL, KINTZINGER, and DONEGAN, JJ., concur.