BARR KESHLEAR, Administrator, Appellant, v. CHARLES H. BANNER et al., Appellees.

No. 44329.

JUNE 21, 1938.

REHEARING DENIED SEPTEMBER 23, 1938.

472

Ferguson & Ferguson, for appellant.

J. W. Kridelbaugh and L. H. Mattox, for appellee Charles H. Banner.

Keenan, Clovis & Sar, for appellee Security Trust & Savings Bank.

RICHARDS, J.—In 1890 one James C. Rhoades died intestate, seized of two tracts of land in Page County, one comprising 80 and the other 160 acres. He was survived by his widow, Susie, and by five children ranging in age from about one to eight years. Of these children, one died soon after the death of Rhoades, the other four reached maturity. The widow and children continued to live in a house on these premises. The land was rented out until June 22, 1894, on which date the widow intermarried with Charles H. Banner, appellee. Thereafter they lived as husband and wife until Susie Banner died intestate, on November 30, 1935. At the time of the marriage Susie had on the land two or three cows and one horse. She also had $300 in money. Banner was possessed of $600 and a lot which he traded for a team of horses. Pooling their funds and borrowing some additional money, livestock was brought on the place, and from the date of this marriage until the children reached maturity, Banner, his wife, and the children mentioned, together with a daughter born to Mr. and Mrs. Banner, constituted one family. They lived on this land from 1894 to March 1904. The house was old and small, and described as unfit for the family. It was razed, and a new 11-room house constructed, as well as a new barn and corncrib. The untended hedge fences were replaced with wire fencing, two wells and a windmill were added, and other betterments made. These things were accomplished during the ten-year period commencing in 1894. In 1903 the eldest of the Rhoades children, reaching maturity, desired that his interest in the land be separated and turned over to him. For that reason, Mrs. Banner, by equity proceedings, had the land partitioned by a sale which was consummated on March 1, 1904. The family, excepting one son who had neared maturity and had left home, then moved from the farm and resided for a time in Missouri. A year later they returned to Page County.

Out of the proceeds from the partitioning of the land Susie

Banner received $8,613.04. This money might be said to be the nucleus of this controversy. Plaintiff alleges that it was used by the defendant in the purchasing of certain real estate in Missouri, the title to which was taken by defendant in his own name; that this real estate was sold and the proceeds used by defendant in engaging in certain farming operations in Iowa, including the buying and selling of various tracts of real estate, the making of investments in stocks, bonds, securities, and other personal property, the description of which plaintiff does not have; that the original fund and the accruements thereto went into various transmutations from one item of property to another; that on April 30, 1929, defendant took title to a residence property in Shenandoah, the consideration being $6,200, and that since taking title defendant has placed improvements thereon to the extent of $1,800; that defendant used the proceeds of the $8,613.04 and/or the subsequent accruements or a part thereof for purchasing said Shenandoah property and making the improvements thereon, aggregating $8,000; that in addition to said $8,000 there is an additional $20,000 in the hands of defendant, accruements from said $8,613.04 in the form of real or personal property or cash; that at no time since taking the $8,613.04 has defendant been the owner thereof, but has held the same and all the subsequent accruements thereto for the benefit of the estate of Susie Banner, deceased, of which plaintiff is administrator. Plaintiff prayed that defendant be required to render an accounting of the $8,613.04, together with all accruements thereto, that the amount thereof be determined and established as decedent's property, that the decree determine the property now in the hands of defendant, purchased with said $8,613.04 and the accruements thereto, and that said property be impressed with a trust in favor of plaintiff's administrator.

It was shown on the trial that all that defendant then possessed was the Shenandoah property, a $1,250 note, a $15 note and a bank deposit of $1,036. The district court upon a hearing on the merits found that plaintiff was not entitled to any relief and dismissed his petition. Plaintiff has appealed.

As we understand plaintiff's contentions, one of them is that, in the Missouri land, there was a beneficial interest that did not go along with the legal title, because, though the title was taken in the name of defendant, the consideration was paid

with the $8,613.04; that consequently defendant held title in resulting trust for Susie Banner.

In re Estate of Mahin, 161 Iowa 459, at page 465, 143 N. W. 420, 423, it is said:

"To create a 'resulting trust' the party claiming the trust may show: (1) Payment by the *cestui que* trust with her own money. (2) The intention on the part of *cestui que* trust at the time of the conveyance that a trust be created. (3) Conveyance to the trustee. (4) Acknowledgment on the part of the trustee of the trust, or his assent thereto, or failure to dissent after knowledge." From the same opinion: "The burden rests upon the party claiming the trust, to establish, by clear and certain evidence, the facts out of which the resulting trust would arise, to wit, the purchase and payment, and the understanding and intention of the parties in placing the legal title in the alleged trustee."

Similarly in Andrew v. Martin, 218 Iowa 19, 24, 254 N. W. 67, 69, in discussing resulting trusts the opinion states:

"Intention is always an essential element although that intention need not be expressed by words. Jones v. Storms, 90 Iowa 369, 57 N. W. 892; Burkhardt v. Burkhardt, 107 Iowa 369, 77 N. W. 1069; Kortum v. Kortum, 211 Iowa 729, 234 N. W. 220."

In Jones v. Storms, 90 Iowa 369, 57 N. W. 892, as one of the reasons that a demurrer to plaintiff's petition alleging existence of a resulting trust had been properly sustained, the court said this:

"Fairly construed, the petition sets forth a case showing that the husband took and used the real estate of the wife without any expectation of making compensation therefor; and no fact is pleaded which tends to show that, at the time the husband was thus using his wife's property, [i. e., using the income in the purchase of other real estate in his own name], she expected to receive compensation therefor. Such a state of facts does not establish a resulting trust."

That Mrs. Banner turned over to defendant the money she received from the partitioning of the Rhoades land is unquestioned. It was commingled by defendant with several

thousand dollars of his own funds. As nearly as can be ascertained from the record, the Missouri land was bought with these commingled funds, and the title was taken by Banner. But there plaintiff's showing ends, concerning the purchasing of the Missouri land. No participation in the purchasing or in the making payment, on part of Mrs. Banner, is even suggested by the evidence. It cannot be said that Mrs. Banner converted into money her interest in the Rhoades land for the purpose of acquiring a beneficial interest in the Missouri land (in the manner of the factual situation in Re Estate of Mahin, 161 Iowa 459, 143 N. W. 420) because the only purpose in instituting the partition suit was to meet the demands of one of the heirs that he have his share. Nowhere in the testimony, or in the circumstances shown, does Mrs. Banner appear in the role of a purchaser. On the contrary, Banner had entered into a contract of purchase of the Missouri land, on his own account, prior to his wife turning the money over to him and so far as the record shows without Mrs. Banner having any part therein. Plaintiff has not shown on the part of Mrs. Banner that she gave any directions or made any request or had anything to do concerning the taking of the title. In brief there is neither direct evidence nor are there any circumstances from which a reasonably convincing deduction may be drawn that she intended to acquire or even anticipated having a beneficial interest in the Missouri land. In the light of the foregoing authorities, the insufficiency of plaintiff's evidence becomes apparent. Additionally there is to be taken into consideration defendant's evidence tending to show that there was in fact no such intention or expectation on the part of Mrs. Banner. The substance of this testimony was that in connection with the partition proceedings Mrs. Banner inquired of her attorney whether from the proceeds the court would allow her husband for the improvements he had placed on the land; upon the attorney replying in the negative she inquired whether she could give Banner her part, her reason for wanting to do so being that Banner had raised the family and improved the land; that the attorney advised her that she could give him her part; that at about this time, at the home, Mrs. Banner said she was going to give her share out of the partition sale to her husband, this conversation being related by witness Fred Rhoades, one of Mrs. Banner's sons. We are convinced this testimony correctly re-

lates the statements as to the intent that was in the mind of Mrs. Banner when the statements were made. It also appears that the improvements to which she referred amounted to $6,000.

Though the resulting trust if any arose when the deed was taken and the legal title vested in defendant, Andrew v. Martin, 218 Iowa 19, 254 N. W. 67, yet the subsequent action of the parties is not immaterial so far as it may throw light on their intentions when the property was acquired in 1904. Subsequently defendant and his wife lived together while the younger children were reaching maturity and for a period of over 30 years, until Mrs. Banner's decease. During the last 18 years of her life she was increasingly an invalid, requiring surgical operations, hospitalization, extensive trips in search for better health, involving expenditures of large sums of money, amounting to $10,000 according to defendant's testimony. The Shenandoah property to which reference has been made in which Mrs. Banner and her husband lived during the last five years of her life she expressly stated was her husband's property. It is true that there is controversial testimony, such as testimony concerning Banner's saying that he was attending to his wife's business and that he had done so successfully. In view of the difficulty there is in repeating with entire accuracy casual conversations long after they occurred, and in acquiring from such repetitions with certainty the meaning intended at the time, and in view of the remainder of the record, we deem these alleged statements of Banner, if he made them, of slight aid in arriving at the facts.

The plaintiff is seeking to avoid the defendant's legal title of more than 30 years standing, and the burden is upon plaintiff. With respect to that burden, ''It is a familiar rule that the court will not overturn the legal title to property, or charge the holder of such title with an implied or resulting trust, save upon clear and satisfactory testimony. A mere preponderance of the evidence is not sufficient. It must be explicit, decisive, and leave the existence of no essential element to conjecture or to remote and uncertain inference.'' Cunningham v. Cunningham, 125 Iowa 681, 687, 101 N. W. 471, 472; Harnagle v. Fett, 215 Iowa 868, 244 N. W. 704. We are of the same opinion as was the trial court, i. e., that plaintiff has not successfully carried such burden. What is found in the cases in which this court held that the allegations of the petition, or the evidence, did warrant a finding that the title was held in resulting trust,

confirms our conclusion. The foundation case is Cotton v. Wood, 25 Iowa 43, in which it was held on appeal that the petition was not demurrable. The facts set out therein were, (1) plaintiff purchased the real estate, (2) he paid for it out of his own means, (3) he caused the conveyance to be made to his wife, (4) under an agreement with her that she would convey the property to him, or to whomsoever he might assign his interests, upon request. All these acts of purchasing, paying, and causing the title to be placed in a third person, were the acts of the alleged *cestui que* trust himself. The logic of the case is that acts of the alleged *cestui que* trust, of such a nature, could reasonably lead to an inference that his own intention and expectation were to retain the beneficial interest in the property, no other explanation or presumption appearing. In the case at bar no participation by Mrs. Banner, in either the purchasing, or the paying, or the manner of the vesting of the title, from which any intent on her part to retain an equitable interest might be inferred, is shown. In Re Estate of Mahin, 161 Iowa 459, 143 N. W. 420, there was abundant evidence that the wife converted her property into money with the definite purpose to acquire with the money one of the two 40-acre tracts involved. Contrary to her purpose and desire the entire 80-acre tract was conveyed to her husband. In Spring v. Spring, 210 Iowa 1124, 229 N. W. 147, the evidence showed that the negotiations for purchase were made by the alleged *cestui que* trust and by the taker of the title, and that the purchase of the property was brought about by insistence by the *cestui que* trust that a home be acquired before the parties should carry out their plans of marriage. In McGinnis v. McGinnis, 159 Iowa 394, 139 N. W. 466, the alleged *cestui que* trust had entered into a contract to purchase land at the agreed price of $18,000, conveyance to be made on March 1, 1908. Prior to that date this alleged *cestui que* collected certificates of deposit and turned the money over to her daughter who deposited it in her own name. At the request of the alleged *cestui que* the vendor conveyed the land to the daughter who paid $9,000 and secured the remainder by mortgage. The money from the certificates of deposit was used by the daughter in making up the cash payment of $9,000. Although the case turns primarily on the presumption that the turning over of the money to the daughter was a gift or advancement, yet the opinion has this to say

as an additional reason for the conclusion that a resulting trust was not shown (page 400 of 159 Iowa, page 468 of 139 N. W.) :

"Moreover, Mrs. McGinnis [the alleged *cestui que* trust] did not pay the purchase price. It was paid by the grantee. The books will be searched in vain for any rule or principle on which it can be said that A. becomes the equitable owner of land conveyed to B. simply because he advanced or furnished B. money with which to make the purchase."

██ It is also one of appellant's propositions that on this appeal this case may not be heard upon the merits, for that the allegations of his petition must be taken as true. Even so an affirmance might result, on the ground that there may be the same insufficiency of allegations in the petition as appears in the evidence. But passing that question, appellant in support of his proposition cites the rule laid down in Miller v. Johnson, 205 Iowa 786, 218 N. W. 472, that "When a general denial and new matter as a defense are pleaded in a single division of the answer only, the admission implied of the cause of action must control, and the general denial be disregarded." Appellant points out that in his answer defendant alleged laches, estoppel and homestead character of the Shenandoah property, as affirmative defenses. But with appellant's further assertion that these affirmative defenses were not alleged in divisions of the answer, separate from a division in which there was a general denial, we do not agree. The answer was in fact divided into six separate parts, and each of these parts was preceded by a different numeral, beginning with the numeral 1, and ending with 6. In the part identified by the numeral 1 appears a general denial. The part identified by the numeral 2 contains admissions of certain portions of plaintiff's petition. In the portion identified by the numeral 3 is a special denial that the money used in Missouri belonged to Susie Banner. In the parts designated by the numerals 4, 5, 6, appear the respective affirmative defenses. It would have been better pleading had the word "division" as well as the numerals identified each of these separations of the answer into distinct subject matters, and probably the trial court upon motion would have required that the pleading be made more specific in that particular. But, though the word division does not appear, the answer was in fact in divisions, each relating to a distinct element of defense, and the successive

divisions or parts separately designated by numerals. As applied to such a situation appellant's proposition is unduly technical, and cannot be sustained. The decree of the trial court is affirmed.—Affirmed.

Chief Justice and all Justices concur.