RAY ET AL. v. TEABOUT ET AL.

1. **Fraudulent Conveyance:** HUSBAND TO WIFE: EVIDENCE NOT ESTABLISHING. Upon consideration of the evidence in this case, *held* that it is not sufficient to establish that a conveyance from husband to wife was fraudulent as against creditors of the husband.

2. ———: ———: ESTOPPEL: FACTS NOT AMOUNTING TO. Where a wife, long before her husband became indebted, was in the exclusive possession, by her tenants, of a farm, under an unrecorded conveyance from her husband, in which farm she had invested considerable of her own money, which, as between her and her husband, formed a consideration, in part at least, for the conveyance, and the deed was not withheld from record by her with any purpose on her part to aid her husband to incur indebtedness on the strength of the title as it appeared of record, *held* that she was not estopped from asserting her title as against her husband's creditors.

3. ———: PLEADING: EVIDENCE. Where defendant's title is attacked on the ground of fraud, he may, under a general denial, introduce any proof showing that his title is not fraudulent.

4. ———: TO STRANGERS TO DELAY CREDITORS: KNOWLEDGE OF GRANTEES: EVIDENCE. If it be admitted that the evidence in this case shows a fraudulent intent on the part of the grantor in making certain conveyances of land, it fails to show that the grantees had knowledge of such intent, or participated therein, and the conveyances are, therefore, sustained as against the creditors of the grantor.

*Appeal from Winneshiek Circuit Court.*

WEDNESDAY, DECEMBER 3.

THIS is an action in equity in the nature of a creditors' bill, by which it is sought to subject certain real estate to the payment of the debts of the insolvent partnership of Teabout & Valleau. The said real estate consists of a number of tracts of land, the legal titles to which are held in severalty by the defendants in the case. There was a trial to the court, and a decree was entered for the defendants. Plaintiffs appeal.

*Willett & Willett*, for appellants.

*L. Bullis* and *C. Wellington*, for appellees.

ROTHROCK, CH. J.—A number of parties were joined as plaintiffs. Each party plaintiff is the holder of a valid claim against the insolvent partnership. The lands which it is sought to subject to the payment of these claims are situated partly in Winneshiek and partly in other counties in this state, and some of the defendants are non-residents of Winneshiek county, the place where the action was brought and tried. Much of the argument of counsel for appellants is devoted to the question as to whether the bill is multifarious, and whether there is a misjoinder of parties. In the view we take of the case, a consideration of these questions becomes unnecessary, and we will proceed at once to a determination of the merits of the controversy, which involves the single ultimate question whether or not the transfers of the several parcels of real estate by Frank Teabout, one of the partners in the firm of Teabout & Valleau, were fraudulent as to the plaintiffs, who are creditors of the firm.

The record presented to us is very voluminous. The abstract contains 335 pages, and counsel, in their arguments, discuss at length, and in a most admirable manner, every

conceivable question of fact and law in the case.   The record
and arguments could not well be otherwise than voluminous,
as the case involves several distinct cases in one.   In deter-
mining the several issues involved, we will not attempt to
review the evidence upon which we base our conclusions.  We
deem it sufficient to state our conclusions upon the material
questions in the case.   Indeed, we can do no more than this,
because it is wholly impracticable to undertake a review of
the evidence, and in our recital of what we regard as estab-
lished by the evidence it will be understood that we have
reference to weighing the evidence upon a careful examination·
of the abstract and arguments of counsel, having in view the
conceded rule, that, as the defendants hold the legal titles to
the property, the burden is on the plaintiffs to show that such
titles are fraudulent by clear and satisfactory evidence.   It is
claimed with some confidence that there was a conspiracy
entered into by the defendants, or some of them, to use the
credit of the partnership of Teabout & Valleau to defraud
the plaintiffs.   We do not think there is evidence sufficient
to establish that charge.

I.   It appears from the record that Frank Teabout is about
67 years of age.   His wife, Emma Teabout, is now about 70
years of age.   They were married early in life,
and removed from the east to Winneshiek county
in 1851, and purchased some land, the title to
which was taken in the name of the husband.
This land was improved, and was the homestead of both the
parties until the year 1873.   Before removing to Winneshiek
county, Frank Teabout absented himself from his said wife,
and went to California and Mexico, where he remained some
four or five years.   During his absence his wife, by her own
efforts, accumulated some money.   This money was invested
in the land in Winneshiek county, so that, whether or not
she had thereby any legal right to the land, it was always
understood in the family and in the neighborhood that the
farm belonged to Emma Teabout.   It adjoined the village

1. FRAUDU-
LENT convey-
ance: hus-
band to wife:
evidence not
establishing.

of Frankville, and in these proceedings it is designated as the Frankville farm, and is worth at least $10,000.

About the year 1873 Frank Teabout commenced dealing in western lands in the counties of Clay, O'Brien, Osceola, and Sioux, in this state. He took up his residence in the western part of the state about that time, and his wife remained upon the Frankville farm. There was no separation by reason of any disagreement, so far as appears, but it seems that by common consent the wife remained upon the farm, while he, probably for the purpose of giving attention to his business in the west, absented himself from the farm. After that, his wife rented out the farm, collected the rents of the tenants, and, as the tenants understood, she was the owner of the farm and had the undisputed control of it. In 1878 Teabout was not in debt, and it is conceded that he was then worth at least $100,000. We think the evidence shows that he was then worth more than that amount.

On the twenty-ninth day of April, 1878, Emma Teabout executed and acknowledged a power of attorney to her husband, Frank Teabout, by which he was authorized and empowered to sell and convey any and all of said real estate in her name, or in which she had any interest, including right of dower in any real estate of her husband. This power of attorney was filed for record June 5, 1878, and it does not appear that it has ever been revoked. On the same day on which the power of attorney was filed for record, Frank Teabout conveyed the Frankville farm to his wife, Emma Teabout, by a deed with covenants of general warranty. This deed was duly acknowledged, and was deposited with Warren Walker, the notary before whom the acknowledgment was taken for the grantee therein named. Emma Teabout was not present when the deed was executed. It was not filed for record until after the firm of Teabout & Valleau became insolvent. It is very satisfactorily shown by the evidence that these instruments were both executed without any purpose upon the part of Frank Teabout to contract indebtedness

in the future. As has been said, he was not then in debt, and he was not then engaged in any business in which he contemplated the incurring of indebtedness.

The partnership of Teabout & Valleau was entered into in September, 1878. It contemplated buying and selling produce, cutting, curing, and marketing hay, and raising and selling cattle, in the counties of O'Brien, Sioux, Clay and Lyon, or such other points as might be agreed upon. Teabout agreed to furnish the sum of $5,000 as capital stock. Valleau was not a man of any property, and against Teabout's capital he put in his skill, labor, and service, and each were to share alike in the profits. The firm had its principal office at Decorah. It did not confine itself to the business above mentioned, and in a short time the partnership had two or three general stores, and several lumber-yards, at points on the Milwaukee & St. Paul Railroad west of Decorah, in this state, and in the territory of Dakota. A very large business was done, amounting, it is claimed, to about $800,000 a year; and in the last days of April, 1881, the partnership failed, being indebted many thousands of dollars in excess of its assets, and in excess of the individual property of its members. Valleau was the business man of the firm. Teabout knew nothing about the business, excepting that in the last year he knew that it was in debt, and that he was frequently called upon to provide means for the payment of its debts.

So far as the title of the Frankville farm appeared of record, it was the property of Frank Teabout until after the failure of the partnership, when the deed to Emma Teabout was put on record.

It is claimed that, as the plaintiff's debts were contracted while the title appeared of record to be in Frank Teabout, and on the faith of said ownership, Emma Teabout is estopped from setting up title against the claims of plaintiffs. We think this argument is fully answered by two or three considerations: (1) Long before these debts were contracted, Emma Teabout was in the

2. —: —: estoppel: facts not amounting to.

exclusive possession by her tenants of the farm under a conveyance from her husband. An inquiry upon the farm, of those in possession, would have developed the fact that the tenants were the tenants of Mrs. Teabout. (2) The money earned by Emma Teabout during the absence of her husband was invested in the Frankville farm, and, as between her and her husband, it formed a consideration in part, at least, for the conveyance of the farm to her. (3) The deed was not withheld from record by Emma Teabout with any purpose on her part to aid her husband to incur indebtedness on the strength of the title as it appeared of record. Indeed, she knew nothing of the indebtedness of her husband until about the time the partnership failed.

The conveyance of the Frankville farm was not, therefore, a mere voluntary conveyance. It was upon a good and sufficient consideration, accompanied with possession exclusive in its character, and not such as might as well be considered the possession of the husband as the possession of the wife. Here, then, we have a conveyance for a consideration, coupled with actual possession, which is notice to the world of the rights of the grantee, and the mere neglect to file the deed for record cannot operate as an estoppel against the grantee.

Some question is made as to the right of Mrs. Teabout to avail herself of the fact of possession, and the consideration

3. ——: pleading: evidence. paid for the conveyance, because she does not, in her answer, specially set forth these claims to the land. But we think, as the plaintiff attacks her title upon the ground of fraud, the general denial of her answer is sufficient to authorize any proof showing that her title is not fraudulent.

II. The other conveyances which it is claimed are fraudulent were made by Frank Teabout to the defendants G. H.

4. ——: to strangers to delay creditors: knowledge of grantees: evidence. Valleau, Warren Walker, C. Wellington, H. C. Woods, and M. H. Allen. Nearly all of the lands so conveyed are situated in the western counties above named. Without entering upon a separate

Ray et al. v. Teabout et al.

discussion of the merits of each conveyance, we deem it sufficient to say that, while we might be inclined to hold that, as these conveyances were made a short time before the failure of the partnership, Frank Teabout may have made some of them in contemplation of insolvency, yet we think that the grantees are not shown to have had such knowledge of that intent as to charge them with any participation in any design to hinder, delay, or defraud the creditors of Teabout. It is true that some of these sales were made without any cash payments, and that mortgages were taken back for the whole of the purchase-money, and some of the grantees were unable to make the purchases and pay for the lands, and some of the lands appear to have been sold for less than such lands were probably worth. But it is shown beyond question that Teabout bought and sold thousands of acres of land in the same way long before he was indebted at all, and that part of his lands were held upon tax titles; that it was his mode of doing business to sell wholly on time, take mortgages, and sell the mortgages. In view of these facts, which were known to purchasers, we do not think they were chargeable with notice of any fraudulent purpose on the part of Teabout; and as to the purchases by G. H. Valleau, we are not prepared to hold that the evidence that he made actual payment in cash is overcome by any established fact in the case.

Our conclusion upon the whole case is that the decrees of the circuit court must be

AFFIRMED.