# H. H. OBERHOLTZER v. JOHN T. HAZEN, Sheriff, Appellant.

**Fraudulent Conveyance: Evidence.** On one side, the testimony tended to show that plaintiff furnished his son money to carry on business, acted as banker for him, paid his bills, took interest on his advances and, finally, was given a mortgage on the stock of the son, at a time when the son was insolvent and largely indebted to others. On the other, that plaintiff was the real owner, and the mortgage colorable. *Held,* a finding by a jury that plaintiff was not the owner of the business and his mortgage a *bona fide* one, will not be disturbed.

**Badges: Burden of Proof.** Relationship is not a badge of fraud. Transactions between relatives which show something out of the usual course of business do not put the burden on grantee to show good faith and valuable consideration by clear and satisfactory evidence. Neither does proof of certain other badges have such effect.

**Practice: Evidence.** Erroneously excluding testimony is not reversible error where the record shows that no prejudice resulted.

**SAME.** Whether a certain person "seemed" to be the manager "when around," is a mere conclusion.

**SAME.** An invoice may be introduced merely to identify a stock, where the court states it is not to prove value.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

## FRIDAY, DECEMBER 14, 1894.

THIS is an action at law brought by the plaintiff against the defendant, who is sheriff of Pottawattamie county, to recover damages for the alleged conversion of a certain stock of merchandise, consisting of tobacco, cigars, pipes, etc., owned by one C. M. Oberholtzer, and by him mortgaged to the plaintiff to secure a note, in the sum of seven thousand, nine hundred and twenty-seven dollars, made by the said C. M. Oberholtzer to the plaintiff. The defense was that defendant took possession of the said stock of goods under and by virtue of

an attachment issued in a certain case wherein M. Kinports was plaintiff, and C. M. Oberholtzer was defendant, and that he afterward sold the same, and applied the amount received upon the judgment that Kinports recovered in his suit; that plaintiff's mortgage was wholly without consideration, and executed with intent to hinder, delay, and defraud the creditors of C. M. Oberholtzer; that plaintiff was at all times the owner in fact of the stock of merchandise, and that C. M. Oberholtzer had no interest therein; that, while the business was carried on in the name of C. M. Oberholtzer, yet the obligations created by him were in fact the obligations of plaintiff, and the mortgage was made as a scheme or trick to enable plaintiff to defraud his creditors; that C. M. Oberholtzer was in no way indebted to plaintiff, for that the business wholly belonged to plaintiff. The reply was a denial of the allegations of the answer, and a plea of estoppel. On the issues thus joined there was a trial to a jury, which returned a verdict for plaintiff, on which judgment was rendered, and defendant appeals.—*Affirmed.*

*Flickinger Brothers* for appellant.

*Wright & Baldwin* and *John P. Organ* for appellee.

DEEMER, J.—There are fifty-four assignments of error in this case, but they may all be grouped under five heads: *First.* Alleged error in the admission and rejection of testimony; *second,* failure to give instructions asked; *third,* error in the instructions given; *fourth,* refusal of the court to set aside the special findings of the jury; and *fifth,* error in the court in refusing to instruct for defendant.

I. Under the first head counsel have argued a great many questions presented by the record in the admission and rejection of testimony, to some of which,

only, we will refer, the others either not being of sufficient importance to demand consideration, or, clearly, not prejudicial. The plaintiff was a witness in his own behalf, and testified that the note given him by C. M. Oberholtzer had not been paid to him. He was then interrogated, upon cross-examination, as to whether it had been paid to others for him, and objections were sustained to such questions, because not cross-examination. Strictly speaking, the questions were not cross-examination, but the witness elsewhere stated he did not know the amounts which had been paid others. The other persons to whom payments were made were upon the stand, and gave in detail the amounts received by them. So, if answers should have been permitted, the ruling is clearly without prejudice. One H. R. Oberholtzer, a witness for the defense, was asked on cross-examination, how much time C. M. Oberholtzer put in about the business, and an objection to the question was sustained. It was not cross-examination; and, even if it were, the whole matter was fully brought out by other witnesses, and no prejudice resulted. The same witness was asked why the business of C. M. Oberholtzer did not pay, and objection was sustained thereto. He afterward answered the question by saying he did not know why. Witness Howe was asked as to who seemed to be the financial manager of the business while he was around, and objection was sustained to this. The ruling was clearly correct, for it called for a conclusion of the witness. This witness detailed all he saw of the management of the business, and it was for the jury to say who the manager was. An invoice taken of the stock after it had been taken by plaintiff on his mortgage was offered in evidence by plaintiff, and was admitted by the court, simply to identify the goods, and not as proof of value. Defendant objected to it because it

was incompetent to prove value. It is sufficient to say, in this connection, that the court, in admitting it, expressly ruled that it was not admissible for that purpose. Defendant offered in evidence a sworn answer filed by plaintiff in an action against him in the district court, wherein he was seeking to avoid liability on a certain guaranty by saying that the person to whom he referred was not C. M. Oberholtzer. It is manifest that such fact, if shown, would throw no light upon the issues in this case. *First*, because it is not shown when the answer was made (if made after the making of the mortgage in suit, it was entirely immaterial); and *second*, if made before, we know of no rule which would make it material to the issues presented, except for impeaching purposes, and it was not so offered.

II. The first instruction asked by defendant was a peremptory one to return a verdict for him. We will have occasion hereafter to refer to this, and will now consider others asked. The other instructions asked by the defendant, defining what circumstances amounted to badges of fraud, and explaining the burden of proof, were, so far as correct, given by the court in its charge to the jury. And the questions presented are nearly all determined by the case of *Allen v. Kirk*, 81 Iowa, 658, 47 N. W. Rep. 906, adversely to appellant. The court, in effect, instructed the jury that if, in executing the mortgage to plaintiff, C. M. Oberholtzer intended thereby to hinder or delay or to defraud his creditors, the burden would rest on plaintiff to show that the note and mortgage were executed and delivered to him for a valuable consideration; but, if executed for a valuable consideration, yet if C. M. Oberholtzer intended thereby to hinder, delay, or defraud existing creditors, and plaintiff participated or assisted therein, then the mortgage would be fraudulent. The court further instructed that, if plaintiff had a valid claim against C. M. Oberholtzer, he had a right to secure it, even though he took

all of C. M. Oberholtzer's property; that the burden was upon the defendant to establish the fraud pleaded by him; and gave the following with reference to badges or fraud: "Twelfth. There are in law certain matters which are sometimes termed 'badges of fraud;' that is, matters which, if shown, are usually considered as evidence tending to show fraud. Among these are unusual or extraordinary methods of conducting business, if shown. Any secrecy or concealment in said business, if shown, or any other unusual methods or acts connected with the transactions in question, if shown by the evidence, are proper to be considered in deciding whether fraud in fact existed in connection with said transaction." The defendant asked the following instruction: "(2) Transactions between relatives, where creditors' interests are involved, are closely scrutinized, and, where the transaction shows anything out of the usual course of business, it is incumbent upon the parties claiming under such conveyance to show clearly and satisfactorily that the transaction was *bona fide*, in good faith, and based on sufficient consideration." It is no doubt true that transactions between relatives, where creditors' interests are involved, should be closely scrutinized. But mere relationship, alone, is not a badge of fraud which calls for explanation. Bump, Fraud. Con., p. 54; Wait, Fraud. Con., sec. 242; *Allen v. Kirk, supra*. Does the fact that a transaction between relatives, which shows anything out of the usual course of business, change the burden of proof so as to cast upon the grantee or mortgagee the burden of showing clearly and satisfactorily that the transaction was *bona fide*, in good faith, and for valuable consideration? We think not. As a general rule, when a conveyance is attacked, the burden of proof, where the instrument is valid on its face, rests upon the creditor to show a fraudulent intent or absence of consideration.

Wait, Fraud. Con., sec. 271, and cases cited. A badge of fraud does not constitute fraud in itself, but is simply evidence of fraud,—a means of establishing a fraudulent intent. Bump, Fraud. Con. 33. This instruction was correctly refused, as were others asked by appellant which announced the rule that, upon proof of certain badges of fraud, the burden shifted to appellee to prove, not only a consideration for the mortgage, but its *bona fides* as well.

III. What we have said with reference to the instructions refused disposes of the questions raised with reference to the instructions given. We have examined them all with care, and find no error in them.

IV. The claims that the special findings are not supported by the testimony, and that the court should have directed the jury to have returned a verdict for him, may be disposed of under one head. And we may premise this branch of the opinion by saying that the question here is not what findings we would have made, nor what verdict we would have returned, had we been in the place of the jury. The only question now is, is there any testimony from which the jury might fairly answer the interrogatories as they did, and find the general verdict returned? The claim of plaintiff is that both he and C. M. Oberholtzer were anxious to get H. R. Oberholtzer, a son of plaintiff, into business; that neither H. R. nor C. M. Oberholtzer had any money, but that C. M. was working on a salary, and was willing to engage in a business venture to aid his brother, with the thought that if the business proved a success he would quit his then employment and enter actively into the business. H. R. Oberholtzer was familiar with the cigar business, and it was discovered that one Hess had a small business for sale in the city of Council Bluffs. Plaintiff did not wish to engage in the business himself. It was then arranged that plaintiff should furnish C.

M. Oberholtzer the money with which to purchase this business, which should be conducted in the name of, and for, C. M. Oberholtzer, with H. R. Oberholtzer as business manager. It was also arranged that C. M. Oberholtzer should pay his father interest upon the money so advanced, as well as upon what he should advance in the future. H. R. Oberholtzer was to have complete charge of the business, and, until the profits would justify more, was to receive his living and traveling expenses. The purchase was made of Hess under this arrangement, and the business was conducted for a number of years in the name of C. M. Oberholtzer. Plaintiff was present in the store most of the time, engaged in looking after real estate transactions, his real estate office being in the store; and, as check upon H. R., all the cash went through his hands, and went to his individual credit in the bank. All bills were paid by H. H. Oberholtzer, at the request and by the direction of H. R., with checks signed by the plaintiff. In other words, plaintiff acted as banker for C. M. Oberholtzer. At the request of H. R., the manager, or of C. M. Oberholtzer, plaintiff advanced various sums to C. M. during the time the business was in operation, and at the end of each year there was a reckoning had, and plaintiff was allowed certain amounts as interest upon the advancements made by him. The business was not successful, and at the time of the making of the mortgage in question there was a balance due plaintiff, for moneys advanced, equal to the amount of the note received by him from his son. At that time, C. M. was indebted in the sum of about six thousand dollars to other creditors for goods purchased by him. The mortgage in question was made to secure this note, at the instance and request of plaintiff. On the other hand, there is much testimony tending to show that C. M. Oberholtzer was a mere figurehead, having nothing whatever to do with the

business, except to allow his name to be used; and there is much testimony to show that the plaintiff was the real party in interest during all the time the business was being conducted. There is testimony also tending to show that the mortgage in question was without consideration; that the money advanced to C. M. Oberholtzer by plaintiff was a gift; and that the mortgage in question was made to save the amount invested by the plaintiff, to the prejudice of, and in fraud of, the rights of creditors. The jury, in the special findings, found, however, that C. M. Oberholtzer had a money interest in the business, and had direction or control thereof, and that plaintiff was not the owner thereof. They also found that C. M. Oberholtzer owed plaintiff the amount of the note, which the chattel mortgage was made to secure, and gave this chattel mortgage to secure the indebtedness; and that the chattel mortgage was not executed with intent to hinder, delay, or defraud the creditors of C. M. Oberholtzer. The jury also found that plaintiff was entitled to recover of defendant the sum of two thousand, five hundred and four dollars and eighty-seven cents. The case was fairly submitted upon proper instructions, and, as we have seen, there is evidence to support both the special and the general verdict. We discover no prejudicial error in the record, and the judgment is AF-FIRMED.