FARMERS SAVINGS BANK, Appellant, v. C. O. RINGGENBERG et al., Appellees.

No. 42415.

APRIL 3, 1934.

Hallagan, Fountain & Stewart, for appellant.

Frank W. Burnett, for appellees.

STEVENS, J.—The series of transactions leading up to and out of which this controversy arises may be briefly stated as follows:

C. O. Ringgenberg was indebted upon certain promissory notes to different banks in Polk county. He was the holder of the legal title to 160 acres of land in Polk county and 80 acres in Story county. On April 23, 1932, the appellant, Farmers Savings Bank, obtained a judgment against C. O. Ringgenberg on an $1,800 note in the sum of $1,868.60. Execution was issued on said judgment and

delivered to the sheriff of Polk county for service. C. O. Ringgenberg, in addition to the real estate referred to, was also the owner of a large amount of personal property consisting of grain, live stock, and farm implements. After the issuance of the aforesaid execution and on February 13, 1932, C. O. Ringgenberg, the judgment debtor, conveyed the respective tracts of real estate above referred to to Elizabeth Ringgenberg, his wife, and also gave her a bill of sale transferring to her all of the personal property owned by him. The consideration stated in each of the aforesaid instruments is one dollar and other valuable consideration. Each of the respective conveyances and transfers were made with full knowledge on the part of both the husband and the wife of the judgment and of the issuance and service of the execution. Following the execution of the bill of sale and the two warranty deeds, a proceeding was instituted for the examination of the debtor as to his property.

In due time, this action in the nature of a creditor's bill to cancel and set aside the warranty deeds and bill of sale and to subject the property described therein to execution was commenced in the district court of Polk county. The record of the trial disclosed in substance the following facts and transactions.

On February 26, 1931, C. O. Ringgenberg borrowed $8,000 from James Garvey, a brother of Elizabeth Ringgenberg, his wife. Both the husband and the wife signed a note to Garvey for the sum named, payable one year after date. On account of financial difficulties which followed, the makers were unable to pay the note to Garvey. The father of Mrs. Ringgenberg died some time between the execution of the note and April 1, 1926, leaving Mrs. Ringgenberg an heir to an undivided one-sixth interest in all of his property. Included in the property of her father's estate was 200 acres of land in Pocahontas county and considerable personal property.

On or about the last-named date, Elizabeth and C. O. Ringgenberg joined in the conveyance of her undivided interest in the real estate and personal property of her father's estate to Garvey. The purpose of these conveyances and transfers was to pay, or to compromise and settle, the $8,000 note. The $8,000 note was thereupon turned over to the Ringgenbergs.

Appellee Elizabeth Ringgenberg asserts that the deeds and bill of sale now sought to be set aside and canceled were executed to her for a valid and substantial consideration, to wit, to reimburse her for the sum paid by her out of her separate estate to James

Garvey as surety for her husband on the $8,000 note, amounting at the time of payment to over $11,000. We find no evidence in the record in any way tending to prove the value of the land or personal property received from the father's estate which Mrs. Ringgenberg transferred to her brother, the payee of the note.

We omit some of the immaterial details of the evidence relating to the prior financial difficulties of C. O. Ringgenberg. Two property statements made by him to the Farmers Savings Bank of Ankeny as a basis for credit and one to the Euclid Avenue State Bank of Des Moines were introduced in evidence on behalf of appellant. From these statements it appears that the Polk county tract was mortgaged for $8,000 and the Story county tract for $5,000. The first statement to the Ankeny Bank, which is dated April 30, 1930, showed the net value of Ringgenberg's property to be in excess of $36,000. The second statement dated August 30th of the same year shows a net worth of $28,000 while the statement made to the Euclid Avenue State Bank of Des Moines on September 28, 1931, shows a net worth of only about $11,000. No other testimony in any way bearing upon the extent or value of the property of the judgment debtor was introduced upon the trial.

The judgment debtor was not called as a witness and did not testify upon the trial of the case. In none of the financial statements referred to is there any mention of the indebtedness of the husband to the wife nor was it ever listed for taxation. The personal property described in the bill of sale which is involved in this action would indicate a value of several thousand dollars. The testimony of C. O. Ringgenberg, when examined in the prior proceeding, disclosed that the transfers referred to conveyed all of his property, real and personal, to his wife. His testimony on that occasion as to any indebtedness he was owing her was evasive and indicated that it was at best a small sum. Mrs. Ringgenberg was examined fully upon the trial as to each and all of the transactions involved and there is no direct contradiction of her testimony. The question here presented is largely one of fact. The law applicable to the facts and the rules governing actions in equity of the nature before us have been so long settled in this state and so often restated and reiterated by this court in its prior decisions that we deem restatement and elaboration thereof wholly unnecessary, but see Ford v. Ott, 182 Iowa 671, 164 N. W. 629; Hinman v. Treinen, 196 Iowa 701, 195 N. W. 345; First Nat. Bank v. Hartsock, 202 Iowa 603, 210 N. W. 919;

Webber v. King, 205 Iowa 612, 218 N. W. 282; Dimick v. Munsinger, 207 Iowa 354, 223 N. W. 115; Hakes v. Franke, 210 Iowa 1169, 231 N. W. 1; Case v. Case, 212 Iowa 1213, 238 N. W. 85; First Nat. Bank v. Murtha, 212 Iowa 415, 236 N. W. 433; Holliday v. Hepler, 213 Iowa 488, 239 N. W. 66; Steffy v. Schultz, 215 Iowa Iowa 837, 246 N. W. 910; Madison County Sav. Bank. v. Phillips, 216 Iowa 1399, 250 N. W. 598; Pike v. Coon, 217 Iowa 1068, 252 N. W. 888; Bartlett v. Webber, 218 Iowa ......, 252 N. W. 892.

The $8,000 borrowed from James Garvey was for the purpose of enabling Ringgenberg to make payment upon some real estate purchased by him, the title to which was taken and held in his name. Nothing in any other way passed to Mrs. Ringgenberg as a consideration for her signature on the note. She apparently signed the same in the capacity of a surety only. Upon payment by her of the note by a conveyance and transfer of property belonging to her separate estate to her brother, the relationship of creditor and debtor immediately arose between her and her husband. Leach v. Bassman, 208 Iowa 1374, 227 N. W. 339; Hinman v. Treinen, supra.

Under the long-settled law of this state, the husband has a right in good faith to prefer his wife as a creditor over the claims of other creditors. The evidence is practically undisputed that, in this case, the husband was indebted to the wife. Prior to the conveyances, she had paid his debt to her brother by the transfer and conveyance of her separate property to the husband's creditor.

The law is equally well settled that a voluntary conveyance by a debtor, although to a bona fide creditor for the purpose of hindering, delaying, and defrauding other creditors, may be set aside at the suit of a less fortunate creditor.

One of the questions, therefore, to be determined in this case is: Was the transfer of the personal property and the conveyance of the real estate by the judgment debtor to his wife in good faith, or was it for the purpose of perpetrating a fraud, in which she joined, upon the appellant judgment creditor or other creditors of the grantor? The grantee in the several instruments knew that execution had been issued upon the judgment in favor of appellant and that the same had been served upon her husband. She testified that it was her knowledge of this fact, together with the certainty that the means of enforcing payment of her claim would be lost if she did not take prompt steps to obtain payment thereof.

The one outstanding circumstance which arouses deep suspi-

cion as to the good faith of the transaction is that the husband reserved nothing, not even a single farm implement to himself but transferred absolutely all of his property to his wife. It is difficult to reconcile the transaction on his part with good faith or honest dealing. There is nothing in the record, however, directly or circumstantially, indicating a lack of good faith on the part of the grantee. All transactions of the character here involved between husband and wife and members of the same family are carefully scrutinized by courts of equity and, if a taint of fraud is shown in the conveyances made in pursuance thereof, the same will be canceled and set aside at the suit of a creditor. The two earlier financial statements signed by the husband were not made in the presence of the wife, nor does it appear that she was in any way a party thereto. She did know of the third statement and entered into the discussion with an officer or employee of the bank about the husband's property before the same was signed by her husband. She did not, however, at that time refer to the claimed indebtedness of her husband to her. The statement then made indicated the net worth of the husband to be slightly in excess of $11,000.

It is a matter of common knowledge that real estate in Iowa has appreciably declined in market value in recent years.

It is, however, further asserted by appellant that the consideration for the transfer and conveyance of the property in question was inadequate and that its value in any event greatly exceeded the amount due the wife. It is doubtful, in the light of the facts disclosed, whether the consideration was, in fact, inadequate. The financial statements of the husband were all made prior to the execution of the conveyances and are not binding upon Mrs. Ringgenberg. In the absence of proof of the actual value of the property transferred by the wife to her brother in payment and settlement of her husband's indebtedness or of the value of the real estate and personal property involved herein at the time the same was conveyed to her, the court cannot determine the adequacy or inadequacy of the consideration. There is no such proof of fraud in this case as to place the burden upon the grantee to prove that the transaction was free from the taint of fraud. The burden resting upon a judgment creditor in actions to cancel and set aside conveyances upon the ground of fraud is difficult to meet. The proof is too often in the possession and under the control of the adversary.

Giving full effect to the law in all its aspects and interpreting

the evidence as favorably to appellant as this court may do, we find no theory upon which the relief sought may be granted. Mere grounds for suspicion are not enough. The judgment and decree of the trial court must be and it is affirmed.—Affirmed.

CLAUSSEN, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.