MELVIN ROYER, Receiver, Appellant, v. HARRY G. ERB et al., Appellees.

No. 42776.

MARCH 5, 1935.

Watson & Watson, for appellant.

J. W. Kridelbaugh and S. E. Prall, for appellees.

ALBERT, J.—A judgment was entered against the defendants on the 4th day of January, 1933, on a promissory note signed by Ben Erb and J. O. Erb, dated June 30, 1932, and due December 1, 1932, for the sum of $3,000.

Prior to the date of said note, Ben Erb was the owner of 270 acres of land in Warren county, Iowa. On February 6, 1932, he

deeded to his son Harry G. Erb an undivided one-half interest in this land, and on October 28, 1932, he deeded to said son the other remaining one-half interest. On February 15, 1933, plaintiff filed his petition in the instant case, alleging that said conveyances were without consideration, and were made for the purpose of delaying, hindering, and defrauding the creditors of Ben Erb, and that by reason of said conveyances the said Ben Erb was rendered insolvent and is now insolvent. The petition asks that the said conveyances be set aside, etc.

There are certain fundamental rules that govern actions of this kind. The plaintiff carries the burden of establishing bad faith, and the proof must be clear, satisfactory, and convincing to justify a decree setting aside or reforming a deed because of alleged fraud; the mere preponderance of the evidence is not sufficient. Any other rule would be highly dangerous and tend to weaken confidence in titles. See Harvey v. Phillips, 193 Iowa 231, loc. cit. 233, 186 N. W. 910. Also Hawkins v. VerMeulen, 211 Iowa 1279, 231 N. W. 361. It is equally well settled that mere relationship (in this case father and son) does not give rise to the presumption that the transaction is fraudulent. Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; Madison County Savings Bank v. Phillips, 216 Iowa 1399, 250 N. W. 598; Van Pelt v. Willemsen, 208 Iowa 1326, 227 N. W. 110. It is equally true that a voluntary conveyance is constructively fraudulent and may be set aside if the grantor does not retain sufficient property after such conveyance to pay his then existing debts. Chamberlain v. Fay, 205 Iowa 662, 216 N. W. 700. Proof of circumstances indicating fraud may overcome direct testimony as to good faith. First National Bank v. Hartsock, 202 Iowa 603, 210 N. W. 919. It is equally true that fraud may, and usually must, be proven by circumstantial evidence. Ibid.

Like all cases of this character, its final determination, under the above rules, rests wholly in the realm of facts, and, as usual, the plaintiff in such an action must establish a large share of the facts from the testimony of the judgment debtor. As is usual in a case of this character, little good can be done the litigants or the profession by an elaborate statement of the facts.

The plaintiff called as his witnesses Ben Erb and Harry G. Erb. By so doing he made them his own witnesses, and vouched for their truth and veracity. He is not permitted, under the law, to impeach them; but by other testimony he is entitled to show

that the fact situation is different from that testified to by either of these witnesses. There seems to be no conflict in the testimony between these two witnesses. The fact situation, as they relate it, is that during a part of the time involved herein Ben Erb was the owner of said land. He lived in Indianola, and his son Harry operated the farm, the father furnishing the land and half of the live stock and implements, and the son doing the work and furnishing the other half. The proceeds were divided equally between them. Their testimony is that, at the time of the first conveyance of the undivided one-half interest to the son Harry, the father was indebted to said son in the sum of approximately $9,000, and that the first deed was made to Harry as a part settlement of said indebtedness, and there was no agreement or understanding that it was to be in full of said indebtedness; but that later, in October following, a complete settlement was made between them, and the balance of the farm was deeded to Harry in full settlement. At one time during the progress of this relationship between the father and the son, the father placed a $10,000 mortgage on said farm, which by various payments was later reduced to $2,500.

Certain property statements made by the father and son to the cashier of the plaintiff bank were offered in evidence. There is no claim that the bank acted and relied on said statements in making the loan on which the judgment was obtained. In said property statements the values were fixed upon the land, and neither showed the indebtedness between the father and the son. The claim made by the plaintiff for these property statements is that they tend to negative the statements now made between the father and the son in relation to said indebtedness. Assuming that they are admissible for this purpose, it leaves the position of the plaintiff to be that these two witnesses on the stand testify to the existence of this indebtedness, and the writings do no more at most than to negative said statements. In other words, the witnesses tend to testify to one thing on the witness stand and the writings amount to admissions to the contrary. The first conveyance under the record was not shown to be voluntary, and there is sufficient evidence to show that there was full and valid consideration for the same.

We are satisfied that the plaintiff has not carried the burden of proof assumed by him as to the second conveyance, testimony having been introduced as to the value of this land at various times, and, as usual, there is a large variance of opinion between the

witnesses. Plaintiff's contention is summarized by a statement in his argument that "Ben started out owning practically everything and Harry ended up owning everything". The known and well-recognized depreciation in the values of farm land during the times involved herein is to be taken into consideration. The district court, after a careful review of all the evidence in the case, placed the value of this land at $45 an acre. Deducting the mortgage on the land would make the value of the farm at that time about $9,650. It is claimed that Ben Erb had no source of income other than from this land, and neither had Harry. During the time in controversy, Ben, after having paid the taxes and interest, reduced his indebtedness on said farm about $7,500, and, in addition, had a living for his wife and a daughter dependent on him during all of said time. During the same time Harry accumulated about $9,000 (the indebtedness of the father to him). Apparently the amounts received by the parties to this enterprise were approximately the same. There are some facts and circumstances in the record that might arouse suspicion, but the mere ground of suspicion is not sufficient to justify the setting aside of a transfer of property at the suit of a creditor where he carries the burden of making a clear, satisfactory, and convincing showing. We feel that the plaintiff has not carried the burden placed upon him, and the district court was warranted, under the record made, in dismissing the plaintiff's petition.—Affirmed.

ANDERSON, C. J., and DONEGAN, RICHARDS, PARSONS, KINTZIN-GER, and POWERS, JJ., concur.