FRED C. KNABE (EFFIE C. KROLL, Admrx., substituted), Appellant, v. JOHN A. KIRCHNER et al., Appellees.

No. 45005.

AUGUST 6, 1940.

REHEARING DENIED NOVEMBER 22, 1940.

Herminghausen & Herminghausen and E. W. McManus, for appellant.

E. H. Pollard and B. B. Hesse, for appellees.

BLISS, J.—For about five years prior to September 26, 1931, the defendant John A. Kirchner was the owner of approximately 234 acres of Lee county farm land. All of this land was unencumbered except 90 acres, which he had purchased of V. M. Schmitt about 1926. Schmitt held a mortgage of $12,000 on this 90 acres. There was no equity in this tract over and above the mortgage, and on September 28, 1931, John A. Kirchner, joined by his wife, the defendant Amelia Kirchner, conveyed it to Schmitt in satisfaction of the mortgage indebtedness. Amelia Kirchner, the wife, was the owner of an additional 90 acres, on which was the homestead of the family. This tract was encumbered by a mortgage of $2,900, held by the Citizens State Bank of Donnellson, Iowa. It was stipulated that there was no value, either in this 90 acres or in the 90-acre Schmitt tract, above the encumbrance. Schmitt and wife and the bank at Donnellson had been made defendants, but the suit was dismissed as to them.

The defendants, other than John A. and Amelia Kirchner, are the children of these two. In as much as the ages of the children are the subject of comment in the arguments they are set out: Anna B. was born April 8, 1899; Edward, April 30, 1902; Fred, April 4, 1901; Carl, May 10, 1908; Emma, January 18, 1910; and Walter, January 28, 1916.

On March 1, 1926, John A. and Amelia Kirchner executed to the plaintiff, Fred C. Knabe, an old neighbor, their note for $2,000 payable one year after date with interest at 5 percent per annum. The money borrowed was to be used in connection with the purchase of the Schmitt land. This note was never renewed or paid but all interest was paid to March 1, 1931.

On September 26, 1931, John A. and Amelia Kirchner executed a deed conveying to their six children, above named, all of the said real estate owned by him after the conveyance of the Schmitt tract. The land so conveyed to the children, contained approximately 144 acres. It was unencumbered, and its value was stipulated at the trial to be $25 an acre. This is

all of the land involved in this litigation, as Amelia Kirchner retained title to her 90 acres. On September 28, 1931, the parents, by bill of sale, transferred to said children certain livestock and other chattels, which included all of their non-exempt personal property. The parties at the trial stipulated that its value was $2,500. In each instrument the only recited consideration was ''$1.00 and other valuable consideration.'' Both were filed for record on September 28, 1931.

When the plaintiff loaned the money to Kirchner he knew of the latter's ownership of the land, and something of the encumbrance against it. At that time he asked for a real-estate mortgage as security, but when Kirchner told him that the boys would pay him if anything happened to Kirchner, the plaintiff did not press the matter of security any further. Once or twice in the years following, the plaintiff asked for a mortgage, but Kirchner, without giving any reasons, told him he could not give a mortgage. Plaintiff first learned of the transfers to the children from his neighbors. On March 29, 1932, he brought his action on the note and secured judgment for $2,119.20 and costs on May 6, 1932. The sheriff's return on the general execution showed no property other than that which had been transferred. This was levied upon.

Plaintiff's petition alleged, in general, the fact statements above outlined, and that Kirchner and wife, when insolvent, had made the pretended conveyance and sale of the real and personal property with the intent to hinder, delay and defraud the plaintiff in the collection of his note, and the children had taken said conveyances and property, with the like intent to hinder, delay and defraud the plaintiff, and without any consideration paid therefor. Defendants, in their original answer, filed December 6, 1932, admitted plaintiff's judgment and the levy thereunder, and the transfer of the property, but denied the allegations that the conveyance was a pretense, or that it was made to hinder, delay and defraud the plaintiff in the collection of his note, and further alleged that ''the sale and conveyances referred to in plaintiff's petition were made for a good, substantial and reasonable consideration.'' The de-

fendants, in a separate paragraph of the answer, denied each and every allegation of the petition not specifically admitted to be true. In compliance with an order of the court in ruling on plaintiff's motion to make the answer more specific, the defendants, on January 18, 1934, filed an amendment to their answer in which they struck out paragraph 4 thereof, which contained the quotation from the answer above set out, and inserted in its stead, the following:

"That said payments and conveyances were made upon good and sufficient consideration, to-wit:

"1. That at the time the defendants, John A. Kirchner and Amelia Kirchner, purchased part of the real estate described in plaintiff's petition, that they agreed with defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner, Emma Kirchner and Walter Kirchner, that if they would stay at home and help farm said real estate, the defendants, John A. Kirchner and Amelia Kirchner, would pay them the usual wages paid male and female farm help.

"That pursuant to the terms of said agreement the defendants worked on said farm of defendants, John A. Kirchner and Amelia Kirchner, but the defendant John A. Kirchner, failed to pay said defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner, Emma Kirchner and Walter Kirchner, any wages for their services.

"That the usual farm wages for male help between the 25th day of August, 1925, and approximately the 25th day of August, 1928, was $40.00 per month, and between the 25th day of August, 1928, and the 25th of September, 1931, was $25.00 per month.

"That the usual farm wages for female help between the 25th of August, 1925, and the 25th of September, 1931, was $1.00 per day.

"That at the time of the conveyance and sale of the real estate and personal property described in plaintiff's petition, to-wit: September 28, 1931, there was due and owing the

defendants, for wages from John A. Kirchner the following amounts:

"(a) Anna Kirchner, Aug. 25, 1925, to Sept. 25, 1931, 72 months at $30.00 per month—$2,160.00.

"(b) Edward Kirchner, Aug. 25, 1925 to Aug. 25, 1928, 36 months at $40.00 per month—$1,440.00. Aug. 25, 1928, to Sept. 25, 1931, 36 months at $25.00 per month—$900.00.

"(c) Carl Kirchner, Aug. 25, 1925, to Aug. 25, 1928, 36 months at $40.00 per month—$1,440.00; Aug. 25, 1928, to Sept. 25, 1931, 36 months, at $25.00 per month—$900.00.

"(d) Fred Kirchner, Aug. 25, 1925 to Aug. 25, 1928, 36 months at $40.00 per month—$1,440.00; Aug. 25, 1928, to Sept. 25, 1931, 36 months at $25.00 per month—$900.00.

"(e) Emma Kirchner, Aug. 25, 1925, to Sept. 25, 1931, 72 months at $30.00 per month—$2,160.00.

"(f) Walter Kirchner, Aug. 25, 1928, to Sept. 25, 1931, 36 months at $25.00 per month—$900.00.

"That said property described in plaintiff's petition was conveyed and sold by John A. Kirchner and Amelia Kirchner to the defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner, Emma Kirchner and Walter Kirchner as payment of the wages hereinbefore referred to."

On October 8, 1934, plaintiff filed his reply, realleging the fraud and invalidity of the deed, denying every allegation in the answer as amended, and demanding "strict proof thereof", and praying that the defendants "be required to appear personally on the trial of the case for examination and cross examination on the allegations contained in their answer as amended."

On February 2, 1937, the first day of the trial, defendants filed a verified amended and substituted answer. It is substantially the same as the original answer, except that paragraph 4, relative to the consideration, which was redrawn in the amendment of January 18, 1934, was again redrawn. The substituted answer contained a general denial of all allegations not specifically admitted, and also a specific denial of the allega-

tions that the conveyances were bu' pretended transfers, and in fraud of creditors.

Paragraph 4 is as follows:

"4. That said defendants allege that said sale and conveyance were made upon good and sufficient consideration, to-wit:

"A. That in 1925, at the time the defendants, John A. Kirchner and Amelia Kirchner purchased part of the real estate described in plaintiff's petition, that they agreed with their children, the defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner, and Emma Kirchner, that if they would stay at home and help farm said real estate, the defendants, John A. Kirchner and Amelia Kirchner, would pay them while thus helping, the usual wages paid male and female farm help in that vicinity—said payments to start in the case of those children who were not of age in 1925, from the time each reached the age of 18 and that it was further understood and agreed that said usual wages for female help were $1.00 per day and that this amount would be paid.

"B. That pursuant to the terms of said agreement, the defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner, Emma Kirchner and Walter Kirchner, worked on said farm of the defendants, John A. Kirchner and Amelia Kirchner, but the defendant, John Kirchner, failed to pay said defendants any wages for their services.

"C. That the usual farm wages for male help between the 25th day of August, 1925, and approximately, the 1st day of March, 1930, was $40.00 per month, and between the 1st day of March, 1930, and the 26th day of September, 1930, was $25.00 per month, with free board and room always to be furnished such help.

"D. That the usual farm wages for female help between the 25th day of August, 1925, and the 26th day of September, 1931, was $1.00 per day, with free board and room.

"E. That at the time of the conveyance and sale of the real estate and personal property described in plaintiff's petition, to-wit, September 26, 1931, there was due and owing the

defendants for wages from John A. Kirchner, the following amounts:

"(a) Anna Kirchner, September 25, 1925, to September 26, 1931, 2192 days at $1.00 per day $2192.00, less approximately $25.00 per year paid, leaving $2042.00 the net amount due Anna Kirchner.

"(b) Edward Kirchner, March 1, 1926, to March 1, 1930, 60 months at $40.00 per month and March 1, 1930, to September 26, 1931, at $25.00 per month, or a total of $2875.00, less approximately $300.00 paid and less approximately $450.00 for periods totaling less than one year during the aforesaid periods when Edward Kirchner was working elsewhere, leaving $2125.00 as the net amount due Edward Kirchner.

"(c) Carl Kirchner, March 1, 1926, to March 1, 1930, 60 months at $40.00 per month, and March 1, 1930, to September 26, 1931, at $25.00 per month, or a total of $2875.00, less approximately $400.00 paid, leaving $2475.00 as the net amount due Carl Kirchner.

"(d) Fred Kirchner, March 1, 1926, to March 1, 1930, 60 months at $40.00 per month and March 1, 1930, to September 26, 1931, at $25.00 per month, or a total of $2875.00 less approximately $400.00 paid, leaving $2475.00 as the net amount due Fred Kirchner.

"(e) Emma Hoyer, formerly Emma Kirchner, January 18, 1928, when she became 18 years of age, to September 26, 1931, 1348 days at $1.00 per day or $1348.00 less approximately $100.00 paid, leaving $1248.00 as the net amount due said Emma Hoyer."

Paragraph 5 is as follows:

"5. That Anna Kirchner, from the time she became 18 in April, 1917, until September 25, 1925, worked for her parents on their farm and kept house for them except from June to December in one year and from April until fall in another year, making a total of over 7 years she worked for her said parents without receiving any compensation, except the sum of

approximately $200.00; that her parents during this period advised her that they would pay her for her services and she expected to be paid by her parents for her services; that the reasonable value of such services during the said period of over 7 years and the prevailing wage in that vicinity was not less than $1.00 per day, making a total in excess of the sum of $2500.00, leaving $2300.00 as the amount due said Anna Kirchner during this period between April, 1917, and September 25, 1925."

Paragraph 6 is as follows:

"6. That the aforesaid conveyance by the defendants, John A. Kirchner and Amelia Kirchner, to the defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner, Emma Kirchner and Walter Kirchner, was in payment of the wages hereinbefore referred to and was accepted by said defendants, Anna Kirchner, Edward Kirchner, Carl Kirchner, Fred Kirchner and Emma Kirchner, to whom the aforesaid wages were due, including the wages due Anna Kirchner as set forth in Par. 5 of this amended and substituted answer in full settlement and payment of such wages."

It was stipulated that the original reply should apply to the substituted answer, and that all pleadings filed should be a part of the record.

The plaintiff was a witness for himself and he also used four other witnesses, none of whom was a defendant. Plaintiff also offered in evidence, as part of his case, the book from the recorder's office, showing the warranty deed in question, and also the original bill of sale showing the filing and recording thereof in the recorder's office.

From the evidence introduced by plaintiff and from the stipulated facts, it appears without question that John A. and Amelia Kirchner were insolvent at the time of the execution of the deed and bill of sale. This testimony also fairly shows that for about five years before the execution of the questioned instruments John A. Kirchner and wife owned and operated about 324 acres of farm land, of which approximately 200

acres were tillable and the remainder was timber, pasture, or nontillable; that during all of this time the farm buildings were all on the wife's 80 acres and the parents and the six children made their home there; that all of these children remained single until Emma married and left the parental home some years after the execution of the deed and bill of sale in September 1931; that after September 1931 the defendants continued to live on the wife's 80 acres, and there appeared to be no difference in the operation of the farm than during the preceding years. There was some testimony that the boy, Ed, had worked for others than his parents, during the farming season of some of these years, but the testimony as to the particular years and the extent of this work is rather indefinite. There was also some testimony of services away from home performed by Anna but this testimony was still more vague and indefinite. The defendants introduced no testimony, or evidence of any kind.

We have set out the pleadings with considerable particularity because the appellant has stressed the variance in the particulars of the alleged wage contract as set out in the amendment to the answer, and in the substituted answer, and because of the vigorous contention of the appellant that by reason of the alleged affirmative allegations in the substituted answer respecting the wages agreement and the facts constituting the consideration for the conveyances, the burden was upon the appellees to sustain these allegations by proof.

Appellant states this particular contention in his first proposition for reversal, in the following language:

"Since the answer admits that there was no consideration for the transfer except an agreement to pay wages, appellant is entitled to the benefit of the admissions in the answer, but they constitute no proof of the agreement and it was incumbent upon appellee to sustain the alleged contract by proof."

The appellees answer this proposition thus: "Appellees make no claim that their answer constitutes proof of the wage agreement. Appellees do not admit and their answer nowhere

admits that there was no consideration for the transfers except the wage matter. The general denial and the specific denial negate such a claim. The additional subsequent detailing of a specifically described consideration in compliance with appellant's motion and the trial court's order constitute no admission that this was the sole consideration. Proof of any type of consideration was admissible under either form of denial and in the absence of any denial under the instruments of conveyance introduced by appellant as a part of his case.

"Appellant's claim of fraud is the affirmative allegation herein involved. Neither appellees' general denial nor their specific denial, nor the amplification of such denials through pleading a specifically described consideration constitutes an affirmative defense. The conveyances both stated they were executed for '$1.00 and other valuable consideration.' This threw the burden of proof upon appellant and this burden never shifted."

I. The issues involved in suits of this character are hoary with age, but they present themselves with all the vigor of youth. Because of the prevalence of conveyances to defeat creditors statutory prohibitions were enacted as early as the reign of Elizabeth, and since the early construction of this statute in Twyne's Case, 2 Coke's Rep. 212, Part III, page 80b, 76 Eng. Rep. (Reprint) 809, 1 Smith's Leading Cases, 1, 33, in 1601, the subject of fraudulent conveyances has been fruitful of a vast body of decisions. The reports of this court abound with such cases. Because the principles of law applicable thereto have been so many times repeated by this court, we will confine our discussion thereof and citation of authorities strictly to the issues here involved. With respect to existing creditors the uniform rule is that any transfer of property, by an insolvent, not made on a consideration deemed valuable in law, is prima facie void. The question for determination in this case is whether the transfer of the property of the elder Kirchners was a bona fide transaction, or whether it was a trick and contrivance to defraud the plaintiff. Although the

defendants admitted generally the transfer of the property, as alleged, they did not admit the execution of the specific conveyances. Plaintiff introduced proof of these instruments, and of the recited consideration in each of "$1.00 and other valuable consideration." The plaintiff thus established, prima facie, that the deed and bill of sale were not voluntary conveyances, but were each given for valuable consideration. The consideration recited in a conveyance is to be taken as prima facie true, but this presumption may ordinarily be rebutted by parol testimony. .

Under repeated holdings of this court a conveyance which states that the property transfer is made in consideration of "$1.00 and other valuable consideration", purports thereby to be based upon a valuable consideration. Williams Sav. Bank v. Murphy, 219 Iowa 839, 259 N. W. 467; First Nat. Bank v. Currier, 218 Iowa 1041, 256 N. W. 734; Royer v. Erb, 219 Iowa 705, 259 N. W. 584; Farmers Bank v. Skiles, 220 Iowa 462, 261 N. W. 643; Andrew v. Martin, 218 Iowa 19, 254 N. W. 67; Donovan v. White, 224 Iowa 138, 275 N. W. 889; Tirrill v. Miller, 206 Iowa 426, 218 N. W. 303.

The plaintiff in his petition alleged that the instruments of transfer had been made, delivered, and received, without consideration and with the intent to hinder, delay and defraud him in the collection of his claim. Under these allegations and under plaintiff's proof that the conveyances were not voluntary, the burden was upon the plaintiff to prove these allegations. As stated in the Currier case, supra [218 Iowa 1041, 1045, 256 N. W. 734, 737]: "In a case where actual fraud is alleged as the basis for setting aside a conveyance, and the deed purports a consideration, the burden of proving lack or insufficiency of consideration, or that the grantee has acted in bad faith, is upon the creditor, even when the grantor is insolvent. The deed, as before indicated, purports to be based upon a consideration. Therefore, the burden of proof is upon the appellant, and not the appellees, to show the inadequacy of the consideration as well as to show the bad faith of the grantee." See also the other cases just cited herein.

Under these decisions the appellees could merely have denied the allegations of the petition, and upon admission in evidence of the deed, showing valuable consideration, have rested their case. The appellant relieved them of the necessity of showing valuable consideration, by introducing the conveyances himself, and thus making prima facie proof of valuable consideration. Such action on his part, however, did not add to his burden, for at all times it was incumbent upon him to establish the allegations of his petition, among which was the absence of consideration. The fact that the appellees denied the absence of consideration was, of course, no allegation of an affirmative defense. And neither was the allegation that there was in fact consideration, nor the further amplification thereof of what that consideration consisted, such an affirmative allegation of consideration on the part of the appellees as required them to assume the burden of proving such consideration, or of relieving the appellant of the burden of proving absence or inadequacy of consideration. This is particularly true when the amplification was in compliance with an order of the court. Such amplification of the denial by a statement of the character and elements of the consideration did not add to the rights and advantage, or to the burdens and disadvantage of the appellees. Had the appellees simply denied the allegations of the petition, they could, if they desired, have offered proof of any facts tending to establish a consideration. This they were not bound to do, and neither are they bound to establish the consideration which they did allege. Had the appellees denied the allegation of fraud and in addition had averred the good faith of the transaction, this would not have made it incumbent upon them to prove their good faith, nor would it have relieved the appellant of establishing his allegations of fraud. The burden which was placed upon the appellant remained with him to the end. None of the appellees were witnesses in their own behalf, and the appellant did not see fit to use any of them as his witnesses. Because of the failure to use any witnesses who might testify directly to the consideration, the only evidence of valuable consideration

is the prima facie proof furnished by the instruments of conveyance. This, however, is sufficient for that purpose unless it has been rebutted and overcome by the evidence of the appellant, and the record as a whole on that issue. The appellant is entitled to any benefit available to him from any admissions of fact in the substituted answer of the appellees. He might accept them or reject them. While denying the truth of these allegations, he argues from the standpoint that if there were evidence in support of them, the allegations are so fantastic and so palpably false that they must be wholly disregarded. The testimony of his own witnesses respecting the consideration is of little help to him. In fact it detracts from rather than aids his case. There is, as we have stated, some testimony that Ed, during the years from 1925 to 1931, inclusive, worked at farm labor among the neighbors. It is admitted in the allegations of the substituted answer that the value of such services among the neighbors was $450. There was also some indefinite testimony that Anna also did some work away from home but the extent or amount of this is left wholly to conjecture. Appellant's testimony establishes that with the exception of these two, the other children were at home. If we adopt the appellant's course and admit the allegations of consideration, solely for the purpose of argument, and take the claimed wages of the children, who were of age during all of the period from 1925 to the execution of the conveyances, they total $8,937. This omits any claim for wages during minority which appellant urges would not be proper consideration. It is conceded that the value of the property conveyed was approximately $6,000. Under the record it appears to us that the appellant failed to carry his burden of establishing absence of or inadequacy of consideration.

II. Has the appellant established by the proper quantum and character of proof that the transfers of property were made and received with the intent to hinder, delay, and defraud the plaintiff? In this endeavor the appellant is aided by the fact that the transferors were insolvent at the time of the transfers, but he is hurt by the fact that there was valuable

consideration. The only evidence of any indebtedness owing by John A. Kirchner to anyone other than to the appellant, is with respect to $1,100 which he borrowed from Peter Seyb in 1925. He owed the principal of this debt but he paid the interest up to and including 1931. There is no direct evidence of any fraudulent intention on the part of the parents or of the children. The mother signed the appellant's note in the kitchen of her home in the presence of some of the children. There is no evidence that they knew of the financial condition of their parents, or of any fraudulent intent on their part. Under this record the defendant children cannot be considered as creditor purchasers, since there is no proof that they were creditors of their parents, and therefore we cannot give them the benefit of the rule that as such creditors they were entitled in good faith to have their debt secured or paid, even though they knew of the insolvency of their parents, and that the latter intended to defeat the claims of other creditors, and that the transfer of this property would defeat such creditors. Under such circumstances the transfers cannot be set aside, unless the grantees were active participants in the fraud of the grantors. For such rule see Grant v. Cherry, 199 Iowa 164, 201 N. W. 588; Steinfort v. Langhout, 170 Iowa 422, 152 N. W. 612; Ford v. Ott, 182 Iowa 671, 164 N. W. 629; Carlisle v. Milliman, 199 Iowa 949, 203 N. W. 268; First Nat. Bank v. Eichmier, 153 Iowa 154, 133 N. W. 454; Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Redhead v. Pratt, 72 Iowa 99, 33 N. W. 382; Barks v. Kleyne, 198 Iowa 793, 200 N. W. 439; Pike v. Coon, 217 Iowa 1068, 252 N. W. 888.

But if the children be considered as volunteer purchasers, buying the property not to satisfy their debt, but simply because they wished independently to acquire the property, and would therefore be bound by any knowledge of the fraud of their parents, or by any notice of facts which if followed up would give them that knowledge, it cannot be said under this record that the conveyances should be set aside. For cases stating the rule of law under the above-stated circumstances,

see Jones v. Hetherington, 45 Iowa 681; Rosenheim v. Flanders, 114 Iowa 291, 86 N. W. 293; Mulvaney v. Buckley, 190 Iowa 1119, 181 N. W. 395; Jordan v. Sharp, 204 Iowa 11, 214 N. W. 572; Flood v. Bollmeier, 165 Iowa 88, 144 N. W. 579; Urdangen v. Doner, 122 Iowa 533, 98 N. W. 317; Lyons & Dickey v. Hamilton, 69 Iowa 47, 28 N. W. 429; Tenold v. Klimesh, 160 Iowa 410, 141 N. W. 1046.

There is no direct evidence in the case that any of the children had any notice or knowledge that the parents were intending to defraud any creditor.

 The fact that there was a family relationship between the grantors and grantees is a matter for careful consideration and scrutiny but it is not, in itself, determinative of the issue of fraud. Erusha v. Wisnewski, 207 Iowa 1187, 224 N. W. 517; Carlisle v. Milliman, supra; Andrew v. Martin, 218 Iowa 19, 254 N. W. 67; Farmers Sav. Bank v. Ringgenberg, 218 Iowa 86, 253 N. W. 826; Bartlett v. Webber, 218 Iowa 632, 252 N. W. 892; Crenshaw v. Halvorson, 183 Iowa 148, 165 N. W. 360; Clark v. Clark, 209 Iowa 1179, 229 N. W. 816; First Nat. Bank v. Currier, supra; First Nat. Bank v. Hartsock, 202 Iowa 603, 210 N. W. 919; Farmers Loan and Trust Co. v. Scheetz, 196 Iowa 692, 195 N. W. 348; Commercial Sav. Bank v. McLaughlin, 203 Iowa 1368, 214 N. W. 542; Hunt v. Hoover, 34 Iowa 77; Hogeboom v. Milliman, 202 Iowa 817, 211 N. W. 396; Oberholtzer v. Hazen, 92 Iowa 602, 61 N. W. 365.

The dominant issue in a case of this kind is fraud. As has many times been stated by this and other courts, fraud is not ordinarily presumed. Mere ground for suspicion is not sufficient to justify the relief asked in this case. To establish the issue of bad faith and fraud on the part of either the parents or the children the proof must be clear, satisfactory and convincing. Harvey v. Phillips, 193 Iowa 231, 186 N. W. 910; Hawkins v. VerMeulen, 211 Iowa 1279, 231 N. W. 361; Steffy v. Schultz, 215 Iowa 837, 246 N. W. 910; Williams Sav. Bank v. Murphy, 219 Iowa 839, 259 N. W. 467; Royer v. Erb, 219 Iowa 705, 259 N. W. 584; Bixby v. Carskaddon, 55 Iowa 533, 8 N. W. 354; Ray v. Teabout, 65 Iowa 157, 21 N. W. 497;

Corn Belt Sav. Bank v. Burnett, 203 Iowa 271, 211 N. W. 217; Barks v. Kleyne, 198 Iowa 793, 200 N. W. 439.

Appellant argues other propositions. One is that the failure to testify on the part of the defendants is a badge of fraud under the circumstances of this case. It was not so considered in First Nat. Bank v. Currier, supra. Another is that knowledge of the fraud of the parents may be presumed in the children because of their relationship. We have already cited numerous authorities to the contrary. Another is the unexplained retention of the property by the grantors. The grantors never lived on any of the transferred real estate, and there is no evidence that the children did not have possession of the personal property, as the grantors and grantees all lived together. Also that the wages of unemancipated children could not be valid consideration. Even without the wages of such children the alleged wages of the adult children were ample consideration. We have carefully read the record and the authorities cited, and it is our conclusion that the decision of the able trial court has substantial support under the whole record. We appreciate that the plaintiff has a difficult task ordinarily in a case of this kind, but that does not relieve him of the burden which the rules of law have placed upon him. In this case as in the Currier case, supra [218 Iowa 1041, 1045, 256 N. W. 734, 737]:

"There is nothing to show that the actual consideration for the deed was anything different from that recited therein; nor does it appear what in fact such consideration may have been other than that indicated by the recitation in the deed itself."

Since the deed and bill of sale each purport a valuable consideration, and the appellant has offered no proof to the contrary, and no evidence of the character warranting a finding of fraud, it is our judgment that the decree appealed from must be and it is affirmed.—Affirmed.

RICHARDS, C. J., and MITCHELL, STIGER, SAGER, HAMILTON, OLIVER, HALE, and MILLER, JJ., concur.