ASENATH McCLOUD, Appellant, v. D. W. BATES, Receiver, and HARRY G. UTLEY, Sheriff, Appellees.

No. 42892.

JUNE 21, 1935.

REHEARING DENIED SEPTEMBER 17, 1935.

E. A. Johnson, and Francis Fleming, for appellant.

Shannon B. Charlton and Thomas H. Tracey, for appellees.

MITCHELL, J.—Asenath McCloud commenced an action to quiet title to certain real estate set out in the petition and to enjoin the defendants, D. W. Bates, receiver of the Delaware County State Bank, and Harry G. Utley, sheriff of Delaware county, Iowa, from selling or attempting to sell under execution certain real estate which she claimed belonged to her, to satisfy a judgment in favor of the said D. W. Bates, receiver, and against Edgar McCloud, her husband. Bates, the receiver of the Delaware County State Bank, answered; admitting that the Delaware County State Bank was a corporation organized under the laws of Iowa, engaged in the general banking business at Manchester, in said county; that said bank closed about May 23, 1932, and one Andrew, then superintendent of banking of the state of Iowa, was appointed receiver of said bank and its assets, and later Bates succeeded Andrew as superintendent of banking of the state of Iowa and also as receiver of said bank; that Utley was the qualified sheriff of Delaware county; that Bates, as receiver, had as part of the assets of the bank under his control, a judgment against one Edgar McCloud, obtained in the district court of Delaware county, Iowa, and, as said receiver, caused a general execution to issue in said cause; that the sheriff, by virtue of said execution, levied upon all of the real estate described in the appellant's petition; that the real estate levied upon was in the name of Edgar McCloud; and that, if the said Edgar McCloud transferred to the appellant in this case the said real estate, it was for such a grossly inadequate consideration as to make such transfer voluntary and fraudulent to the Delaware County State Bank of Manchester, Iowa; that the said transfers were never placed of record; that the Delaware County State Bank made loans, renewals, and extensions to the said Edgar McCloud, relying upon his ownership of said land, without any knowledge or notice to the said bank that Asenath McCloud claimed to be the owner thereof; and that she is now estopped from claiming any right, title, or interest in or to the said land, superior to the lien of the bank under its judgment against the said Edgar McCloud. The lower court dismissed appellant's petition and entered a decree, finding that Edgar McCloud was the title holder and owner of the real estate in controversy, and that the appellant had no right, title, or interest in or to the said real estate superior to the lien of the said judgment or to the levy under said judgment. And the sheriff

was ordered and directed in said decree to proceed forthwith to sell said described real estate or so much thereof as might be necessary under said execution to satisfy the judgment of the receiver of the Delaware County State Bank against Edgar McCloud.

Appellant, being dissatisfied with the finding and decree of the lower court, has appealed to this court.

Asenath McCloud and Edgar McCloud were married some thirty-two years ago and moved to a farm near Manchester, Iowa, where they lived and raised a family of five children. They had transacted business for years with the Delaware County State Bank of Manchester, each maintaining a separate account, Mrs. McCloud having money on deposit in said bank in certificates of deposit. The husband, Edgar McCloud, at various times borrowed money from the bank, which he used in conducting the business of operating his farms. In July of 1931, it appearing that Mrs. McCloud had loaned certain money to her husband, it was agreed between them that some adjustment should be made of their business affairs so as to protect Mrs. McCloud, and they invited to their farm as their adviser one George A. Newman of Manchester, who had been assistant cashier and cashier of the Delaware County State Bank of Manchester, and who was at the time he went out to the McCloud farm a director of said bank. There is some little question as to who invited Mr. Newman to come out; whether it was Mrs. McCloud or Mr. McCloud. But, regardless of that, he went to their farm and there they discussed the business affairs between Mr. and Mrs. McCloud. After carefully considering matters, it was decided that Mr. Newman should prepare certain deeds covering the land in dispute, being a 140-acre farm a mile east of Manchester, a 240-acre farm west of Ryan, and 160 acres of land in Minnesota—although the Minnesota land is not involved in the case at bar. Mr. Newman then went to town, taking the description of the real estate, and prepared the deeds, which were in the usual form, upon warranty deed blank forms, and specified ''One Dollar and other consideration.'' Either on that day or the following morning he went back to the farm, and the deeds were duly executed. It is Mr. and Mrs. McCloud's claim that after the deeds had been executed by Mr. McCloud they were turned over to Mrs. McCloud and by her to Mr. Newman, to be placed in the bank until she called for them. Mr. Newman

took the deeds to the bank, placed them in an envelope, on the back of which he wrote, "to be filed at the death of Edgar E. McCloud," and then delivered them to some official of the Delaware Bank, who placed them in a special box that the bank had for keeping papers that belonged to other parties.

██ █ It is the claim of the appellees that the deeds in question were never delivered by the grantor to the grantee. As set out in the appellee's brief:

"The plaintiff bases her whole right upon a certain deed. Any deed, to be effective, must be delivered—and delivery in the last analysis is a matter of intent upon the part of the grantor to pass a personal interest without right to revoke or recall. This intent is to be gathered from all the facts and circumstances surrounding the transaction."

With this statement we agree. What are the facts and circumstances surrounding the transaction in the case at bar? A husband and wife discuss their business affairs. They decide to call in to assist them in this matter a man in whom they had great faith, who had held positions of importance in the community, for he had been assistant cashier and cashier of the bank with which they had transacted business for so many years, and who was at the time they asked him to come to their home a director in that bank and engaged in the insurance business in Manchester. So we find that there were three people present at the transaction covering the execution of the deeds. Mrs. McCloud says that they talked over the matter; that her husband owed her money, and that in settlement of their affairs the deeds were to be made in cancellation of the indebtedness which McCloud owed to her, and a further assignment of certain certificates of deposit that she had in the Delaware Bank. She says that the deeds were prepared by Mr. Newman. There is no question about this. Mrs. McCloud says that the deeds were delivered to her by her husband in the presence of Mr. Newman, and by her to Mr. Newman, to be placed in the bank until she could call for them. Her husband, the grantor, corroborates what his wife says. Mr. Newman, the man who prepared the deeds and who was present at the time of the transaction, testifies that they were arranging the affairs between these two people so that Mrs. McCloud would be protected for the money which she had advanced and loaned to Mr. McCloud. He is not

certain whether it was Mrs. McCloud or Mr. McCloud who delivered the deeds to him to place in the Delaware Bank, but he did take the deeds and place them in an envelope, inscribing on the envelope the statement, "to be filed at the death of Edgar E. McCloud." He took them to the Delaware Bank, delivered them to some official of the bank, who placed them in a special box provided by the bank for papers belonging to other parties.

A fair reading of the evidence in this case convinces us that the deeds were drawn, signed by the grantor, delivered to the grantee, and by the grantee turned over to Newman, and by him to the bank; that there was a delivery of the deeds, and that the title to the real estate passed from Edgar McCloud to Asenath McCloud upon the execution and delivery of the deed.

■■ But, the appellees say that there was fraud in the transfer of the land from the husband to the wife due to the fact that there was insufficient consideration. It must be kept in mind that the transfer in this case was made back in 1931. It was made at a time when the values of real estate were extremely low. It is the claim of Mrs. McCloud that her husband owed her $7,500. The evidence bears this out. In addition to that, she had certain money on deposit in the Delaware County State Bank, which she was turning over to her husband in consideration of this transfer. There is, of course, a material dispute in the record in regard to the value of the land which was transferred, but the transfer was made at a time when these parties had no idea that the Delaware County Bank was in financial trouble. There was no attempt by the McClouds to conceal the transaction from the bank. An official, a director of the bank, prepared the deeds and then took them to the bank, and the bank itself had possession of them during all this period of time. The McClouds did what Newman, the director of the bank, told them to do, and they did it in the way he told them to do it. There was no purpose or intent to defraud anybody. How can this receiver now complain of and allege fraud, when the man who prepared the papers was a director of the bank for which this receiver is now acting, and when the papers, the deeds themselves, were turned over to an official of the bank and were kept in the files of the bank? At the very time that these deeds were prepared Mrs. McCloud had on deposit in the Delaware County Bank approximately $3,300. If she had any idea that the bank was in financial difficulties, or if she was having her husband

transfer the property to her to defraud the bank of the money which McCloud owed the bank, would not she have withdrawn her deposit from the bank, which was in approximately the same amount that McCloud owed the bank? Certainly, this record shows no fraud or intent to defraud on the part of the McClouds.

The last proposition raised by the receiver is that Mrs. McCloud is estopped from claiming any interest in this land, superior to the bank's judgment. An estoppel is always bottomed upon fraud, actual or constructive. Without such a fraud there can be no estoppel of any kind. . In the case of Beechley v. Beechley, 134 Iowa 75, at page 82, 108 N. W. 762, 765, 9 L. R. A. (N. S.) 955, 120 Am. St. Rep. 412, 13 Ann. Cas. 101, this court said:

''But an estoppel *in pais* is based on fraud, and the conduct relied upon to establish it must be such as to amount to fraud, actual or constructive. There must be deception, and change of conduct in consequence thereof. Garretson v. Equitable Mut. Life & Endowment Ass'n, 93 Iowa 402, 61 N. W. 952. To create an estoppel in the instant case, it is essential that the defendant should have spoken and disclosed his title, and that the plaintiff was induced to sign the conveyance by his silence.''

In the case at bar there is no evidence of fraud. The person who prepared the deed was a director of the bank. The deeds were delivered and placed in the files of the bank. There was no attempt at any time to conceal anything from the appellees. There is no evidence of fraud on the part of the McClouds in this case. The judgment which the bank had against McCloud was an apparent lien against the title to the real estate which had been transferred by McCloud to his wife, the appellant in this case. The lower court should have entered a decree as prayed for in the petition of the appellant, and in failing to do so the court was in error. It therefore follows that the judgment and decree of the lower court must be reversed, and this case remanded for a decree in compliance with this opinion.

ANDERSON, C. J., and KINTZINGER, HAMILTON, POWERS, RICHARDS, DONEGAN, and PARSONS, JJ., concur.