D. W. BATES, Receiver, Appellant, v. B. J. KLEVE et al., Appellees.

No. 44223.

June 21, 1938.

T. H. Carolan and C. N. Houck, for appellant.

Geiser & Donohue and Carl Nystrom, for appellees.

HAMILTON, J.—The defendants, B. J. Kleve and Thresia A. Kleve, were married about the year 1896. At about the same time, B. J. Kleve purchased of his mother a certain 240-acre farm which these parties occupied as their home and upon which they reared their nine children. In 1908 the deed in controversy was executed by the husband to the wife for the consideration of $1.00, love and affection; the $1.00 was paid and the deed was actually delivered and remained in the wife's possession but was never placed of record until shortly after the bank was placed in the hands of a receiver in 1934. No reason or motive for the conveyance to the wife by the husband nor for withholding it from record is suggested by the testimony. These matters are left open to surmise and conjecture only. Of course, the motive

is immaterial, unless fraud be shown. The Kleves were of German descent and spoke Low German in the home. The wife testified that she attended Catholic school until she was thirteen where but little English was taught or spoken and she could not read or write English. For the greater part of the time, she managed the farm with the assistance of her boys and hired help, working in the fields and doing other farm labor. The husband worked away from home running a threshing machine, shredding fodder, filling silos, and doing carpenter work. From 1922 to 1935, he worked continuously for a produce company at Ossian. At the time they were married they owed on the farm about $11,000. The proceeds from the husband's labor and the farm and about $500, which the wife received from her people, all went for the common purpose of the family expenses and paying off this debt. Accounts at the bank were all carried in the name of the husband and father, B. J. Kleve. Apparently, although the record is not very clear as to this, the banking business was mostly done, especially in recent years, by the son, Roy, who, for the past several years, has run the farm on a 50-50 basis. The plaintiff bank was not organized until 1918, ten years after the deed in question was executed. B. J. Kleve became a stockholder from the inception of its organization and from time to time added to his stock, the last purchase of stock being July 26, 1929, and at the time the bank closed owned thirty-one shares. A portion of the time, he was a director. He, also, signed as surety on two of the depository bonds given to the treasurer of the county; on one he qualified by stating that he was worth $60,000 and on the other, $50,000; these bonds bear date of 1920 and 1922, respectively. The property was given in to the assessor in the name of B. J. Kleve as owner. Much of this evidence went in over the objection that it was incompetent and not binding on the wife. She testified that she knew nothing concerning her husband's connection with the bank or of the banking transactions or the way and manner the property was listed with the assessor. The trial court made the following finding of facts:

"That the evidence does not show that at the time of execution and delivery of said deed that the defendant, B. J. Kleve, was insolvent or was being pressed by any creditors nor that any then existing creditor was prejudiced by such transfer.

"That the Festina Savings Bank of which the plaintiff is

receiver was not chartered until April 28, 1918, nearly ten years after the execution and delivery of the deed, and that B. J. Kleve first became a stockholder in said bank in December 1918.

"That said bank closed and went into receivership about June 22, 1934, and that on and prior to said date the defendant, B. J. Kleve, was a stockholder and director of said bank.

"That on or about October 2, 1934, judgment was rendered against the said B. J. Kleve in favor of plaintiff in the amount of $3,100.00 on a stock assessment against him and the execution issued thereon and was returned unsatisfied.

"That there is no evidence which shows that either of the defendants ever affirmatively did any act or said anything to any depositor of said bank regarding the ownership of the real estate in question and that the transactions of the depositors who testified in this cause were with the Festina Savings Bank as a corporation and not with either of the defendants.

"That the evidence shows that none of the depositors who testified and who now claim they were injured by the transfer ever examined the records to ascertain in whose name the real estate in question appeared nor interviewed either of the defendants with the view of ascertaining who was the owner of the property.

"That on cross examination the three depositors who testified as witnesses stated, that the reason they transacted business with the bank was because they thought it was safe and that it was convenient and that they knew they were dealing with a corporation.

"That the evidence does not show that there was any conspiracy or collusion between the two defendants to withhold the deed from record and that there was no active conduct on the part of either of them showing or indicating fraud.

"That the evidence shows that the defendant, Thresia A. Kleve, knew nothing about the business transactions of her husband, B. J. Kleve, and was not aware of who were depositors in said bank.

"That after the transfer of said real estate the farming operations were carried on for the greater part by the grantee and her children.

"That the charge of plaintiff that said transfer was made and the deed withheld from record for the purpose of defrauding the plaintiff or the depositors of said bank and the allega-

tions of conspiracy, collusion and fraud charged against the defendants are not sustained by the evidence and the plaintiff has failed to prove by a preponderance of the evidence the allegations of his petition and that the equities are with the defendants and that judgment and decree should render in their favor.''

We have carefully gone over the record in the light of the legal authorities cited and relied on by the opposing parties and are abidingly satisfied that the trial court's findings are supported by the evidence and his decision is well founded.

■ The appellant's chief contentions are that the execution of the deed constituted a fraud against existing creditors and, under the rule of law announced in the case of Brundage v. Cheneworth, 101 Iowa 256, 70 N. W. 211, 63 Am. St. Rep. 382, was subject to attack by subsequent creditors, and on the theory that depositors in the bank, made ten years and more after the deed was executed, should be classified as creditors of B. J. Kleve, the stockholder, and as such subsequent creditors were entitled to have this deed set aside and that the wife is estopped by her conduct in withholding said deed from record. In the Cheneworth case, supra, after reviewing all of the authorities up to that date, the following rule is announced as the correct rule (page 263):

''(1) A conveyance which is merely voluntary, and when the grantor had no fraudulent view or intent, cannot be impeached by a subsequent creditor. (2) A conveyance actually and intentionally fraudulent as to existing creditors, as a general rule, cannot be impeached by subsequent creditors. (3) If a conveyance is actually fraudulent as to existing creditors, and merely colorable, and the property is held in secret trust for the grantor, who is permitted to use it as his own, it will be set aside at the instance of subsequent creditors. The second rule above laid down is subject to some exceptions, among which may be mentioned cases in which the conveyance is made by the grantor with the express intent and view of defrauding those who may thereafter become his creditors; cases wherein the grantor makes the conveyance with the express intent of becoming thereafter indebted; cases of voluntary conveyances, when the grantor pays existing creditors by contracting other indebtedness in a like amount, and wherein the subsequent creditors are subrogated to the rights of the creditor whose debts their

means have been used to pay; cases in which one makes a conveyance to avoid the risks, or losses, likely to result from new business ventures, or speculations. The following authorities will be found to support the above rules and exceptions: Wait, Fraud. Conv., sections 96, 97, 98, 100; Bump, Fraud. Conv. (4th Ed.) sections 290, 293, 296, 300; 2 Pomeroy, Eq. Jur., sections 971-973; 1 Am. Lead. Cas. (5th Ed.) p. 42, notes. We have not overlooked the fact that there are respectable authorities holding that a conveyance actually fraudulent as to the existing creditors may for that reason alone be avoided by subsequent creditors. We are not, however, prepared to assent to the correctness of such a doctrine.''

Appellees contend that the facts bring this case under division (1) above announced and, hence, even though the depositors be considered subsequent creditors of Kleve, under said rule, the deed cannot be impeached by such subsequent creditors. We agree with the appellees' contention.

We have held that a voluntary conveyance of property by one who is insolvent to another is presumptively fraudulent as against the claims of existing creditors and may, for that reason, be set aside. Chamberlain v. Fay, 205 Iowa .662, 664, 216 N. W. 700. However, there is no showing, in this record, that B. J. Kleve was left in an insolvent condition by the execution of this deed; in fact, the record is entirely barren of proof as to the amount of his indebtedness or as to the amount of his personal property, at that time. Whatever debts he had, at that time, were subsequently paid in full and he made no new debts. Under such a state of facts, it cannot be said that there is a showing of either actual or constructive fraud against existing creditors. Therefore, the deed may not be impeached by subsequent creditors.

■ Appellant's second contention is that the withholding of the deed from record by the wife and permitting the title to stand of record in the husband's name and to be assessed in his name operates as an equitable estoppel against her. The difficulty with this claim is, as pointed out by the trial court, that the conduct of the three or four depositors of the bank, who testified that they would not have left their money in the bank had they known B. J. Kleve, one of the stockholders and directors, had in 1908 made a deed of his farm to his wife, impeached their

sworn contentions, in this regard, for they all stated, on cross-examination, that they did not know how much stock B. J. Kleve owned. That they left their money in the bank and transacted their business there because they thought it was a safe banking institution and none of them testified that they made deposits in the bank or were induced to make such deposits because of anything said or done by Mrs. Kleve, the titleholder of this property. It is indeed a far cry to contend that the withholding of this deed from record, 10 years of which time was before the bank was even organized, was done with the intention of inducing depositors to act on the belief that the land was still owned by B. J. Kleve. The burden of establishing the elements of equitable estoppel was upon the plaintiff and the proof must be clear, satisfactory, and convincing. Royer v. Erb, 219 Iowa 705, 259 N. W. 584. In the case of McCloud v. Bates, 220 Iowa 252, 261 N. W. 766, 768, this court said (page 257):

" 'But an estoppel *in pais* is based on fraud and the conduct relied upon to establish it must be such as to amount to fraud, actual or constructive. There must be deception, and change of conduct in consequence thereof.' "

And again, in Hess v. Masters, 192 Iowa 1063, 186 N. W. 6, 7, we said (page 1065):

"The fundamental principle of estoppel is that the party against whom the claim is made intended that the party claiming the estoppel should rely to his prejudice upon the acts alleged to create the estoppel."

See, also, Smith v. Jones Company, 190 Iowa 1041, 181 N. W. 264; Bihlmeir v. Budzine, 201 Iowa 398, 205 N. W. 763; Stookesberry v. Burgher, 220 Iowa 916, 262 N. W. 820. In the case of Meltzer v. Shafer, 215 Iowa 785, 244 N. W. 851, this court, speaking through Justice Kindig, made the following pronouncement pertinent to this case (page 789):

"A gift may legally be made by a husband to his wife if he has no creditors who, in law or equity, can rightfully complain. Bolton v. Bailey, 122 Iowa 729, 98 N. W. 560. If the appellant Johanna Shafer did not expressly or by implication hold out to the world that her husband owned the land in question, even though others, without her knowledge or consent, express

262

or implied, did so, she, of course, is not estopped from claiming it as her own. White v. Graybill, 184 Iowa 897, 169 N. W. 135; Macheak v. Adamsen, 214 Iowa 446, 239 N. W. 574.

" 'It is essential to estoppel in such a case that the wife should know, or that the circumstances should be such that she ought to know, that others were or might be dealing with the husband, to their prejudice, in reliance upon his apparent ownership'. Farmers State Bank v. Schleisman, 203 Iowa 585 (local citation 586-7), 213 N. W. 211, 52 A. L. R. 182.

"See, also, Brundage v. Cheneworth, 101 Iowa 256, 70 N. W. 211, 63 Am. St. Rep. 382.

"Moreover, before it can be said that the appellant Johanna Shafer is estopped as against the appellees, from claiming the land in question, it must appear that her action in keeping the deed from record and permitting her husband actually to occupy, manage, and control the land induced the appellees to extend the credit in question."

The case of Van E. Peterson, Receiver, v. Wahlquist, 125 Neb. 247, 249 N. W. 678, 679, 89 A. L. R. 747, cited and relied upon by appellant is not in point; the deed in that case was executed after the grantor became a stockholder in the bank and after a contingent liability had arisen and the Nebraska court held that this contingent liability made the depositors existing creditors.

The decree of the trial court being correct, the cause is affirmed.—Affirmed.

STIGER, C. J., and all Justices concur.